Stetler vs. The Chicago & Northwestern Railway Co.

STETLER vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

| | |
|---|---|
| 46 | 497 |
| 79 | 421 |
| 46 | 497 |
| 80 | 291 |
| 46 | 497 |
| 84 | 274 |
| 46 | 497 |
| d98 | 641 |
| 46 | 497 |
| 54 LRA | 128n |
| 54 LRA | 170 |
| 54 LRA | 463 |
| 57 LRA | 716 |

RAILROADS: NEGLIGENCE: INJURY TO EMPLOYEE. *(1) Liability of company using track of another. (2) Track used only for special purposes: how question of negligence limited. (3) Court and jury. (4) Contributory negligence of plaintiff's co-employee no defense.*

1. When a railroad company uses for the running of its trains a track belonging to another person, it is liable for injuries to its employees resulting from the unfitness of the track for such use.

2. In a suit against a railroad company for injury to an employee, *where no recovery can be had for negligence of a co-employee*, if defendant's use of the track alleged to have been insufficient was only occasional and *for special purposes*, and under special instructions to those in charge of trains as to the *manner* of running thereon, it is liable only in case it was negligence to use the track *in that manner and for those purposes*.

VOL. XLVI. — 32

Stetler vs. The Chicago & Northwestern Railway Co.

3. The injury in this case having been received in the state of Illinois, the court erred in taking from the jury the question whether the injury was caused by negligence of the defendant company or by that of plaintiff's co-employee, the conductor of the train, there being evidence for the jury on that question.

4. If, however, the injury was caused by negligence of the defendant company, a recovery will not be defeated by the merely *contributory* negligence of a co-employee, but only by that of plaintiff himself, or of some person for whose acts he is responsible.

APPEAL from the Circuit Court for *Sauk* County.

The case is thus stated by Mr. Justice TAYLOR:

"Action to recover damages for injuries sustained by plaintiff whilst in the employ of the defendant. The injury occurred whilst the plaintiff as a fireman was assisting in running a train of cars on a short line of railroad [in the state of Illinois], extending from its main track to Crystal Lake, a distance of about one mile. The evidence shows that this short track was built by private persons for the purpose of shipping ice over the defendant's road, and that the owners of the ice-houses at the lake kept the road in repair. It also shows that this track was never used by any other railroad company except the defendant, and that, whenever desired by the men controlling the ice business at the lake, the company sent its cars and engines over the track for the transportation of the ice to market. The proof shows that the plaintiff was directed by the proper officer of the company to go upon the engine of the company as fireman, and assist in running cars in and out over this track; and that whilst he was so engaged, and whilst backing in a train of empty cars from the main track to Crystal Lake, the track gave way, and several cars, and the engine upon which he was engaged as fireman, were thrown from the track, and he suffered severe injuries to his arm, head and other parts of his person.

" The evidence shows that the train which was so thrown from the track consisted of twenty-one empty cars, and that it was being backed over the track at the time at a speed of from

Stetler vs. The Chicago & Northwestern Railway Co.

ten to twelve miles an hour; it also shows that the immediate cause of the accident was the giving way of the rails at a place where the ties were very defective and rotten, and where there was a short rail in the track.

"The evidence tends to show that some of the officers of the defendant had some knowledge that this side-track was not at the time in a very safe condition, and that the conductor of the train upon which the plaintiff was employed at the time of the accident, was cautioned by the train dispatcher, when sent out to run over such track, to run slow."

The plaintiff recovered in the court below, and the defendant appealed.

For the appellant, there was a brief by *Smith & Lamb*, and oral argument by *Mr. Lamb:*

1. The constitution and laws of Illinois, in evidence, as construed by the courts of that state, showed that defendant could not refuse to run its trains to the ice-houses and haul out ice for the owners; that this piece of road was as to defendant a public highway, over which it was compelled by law to go with its engines and cars to haul property from the warehouses of the owners. 10 Ch. Leg. News, 372. The Wisconsin statute allows the railroad company to repair the road in such a case (R. S. 1878, sec. 1802); but the law of Illinois gave defendant no such authority. Possibly, if parts of the track had been wholly gone, or its condition had been such as to show clearly beforehand that it was unfit for use, defendant might not have been compelled to go on with its trains. But such was not the fact. Plaintiff, with the crew of a freight train and one hundred men to load trains, had been running back and forth for two full days, and discovered no defect in the road until the accident on the third day. There is no pretense that the road was not originally well-built and perfect in all respects. Defendant, therefore, had no right to refuse to put its trains on this piece of road. Those decisions which require railroad companies, when they own their roads, cars and ap-

purtenances, to furnish them for their employees originally in good and sufficient condition for safe use, and to exercise due care afterwards in keeping them in repair, are clearly inapplicable to such a case as this.    Defendant was not insurer of the safety of its employees (Saunders on Negligence, 120–128); and employees living and working in Illinois must be held to have known the constitution and laws of that state, and defendant's duty under them to run its trains on this road, and to have assumed the risks attending the business under those conditions.    There is a class of cases where one party owns a railroad track or other property to be operated by machinery propelled by steam or other power, and the same is operated by another party, and where both parties have been held liable for injuries caused by some defect known to both. But the ground on which the liability of the party not owning but only operating the property is placed, is, that while the owners have neglected a duty, as for example in not fencing their railroad, the operator, with full knowledge of that patent neglect, has persistently used the road.    *P. & R. I. Railroad Co. v. Lane*, 83 Ill., 448, and cases there cited.    But the conclusion to which these cases irresistibly lead, is, that where the duty to keep a road in repair belongs to the owner, and the party operating it has no authority to repair it, and is lawfully required to use it, and it is not plainly unfit for use, and such party is operating it only temporarily, and is not shown to have any notice or knowledge of defects, the liability attaches only to the owner of the road, on whom the duty of repair primarily rests.    See further, on this point, *Mason v. Mayer*, 49 Ga., 355; *Parker v. Renssellaer & S. Railroad Co.*, 15 Barb., 316, 317; *Whitney v. Clifford*, ante, p. 138.    2. The act of plaintiff's coëmployees in backing the train at the speed proved, had a direct tendency to cause the accident complained of.    For such misconduct on their part defendant was not responsible, in the absence of any evidence that it was negligent in employing them or retaining them in its service.    *C. & A.*

*Railroad Co. v. Rush*, 84 Ill., 570; *Cooper v. Railway Co.*, 23 Wis., 668; *Priestly v. Fowler*, 3 M. & W., 6; Saunders on Negligence, 120–128; Wood's Master & Servant, § 416, and cases there cited. The court therefore erred in refusing to instruct the jury that if they found such management of the train negligent, and that it caused or contributed to the injury, plaintiff could not recover. The rule that a master is not liable to a servant for negligence of a coëmployee, is applicable even in cases where the machinery or apparatus may be defective, if the *promoting cause of injury* is the negligence of the co-servant. *Allen v. New Gas Co.*, L. R., 1 Exch. Div., 251; *Bartonshill Coal Co. v. Reid*, 3 Macq., 266; *Lovegrove v. Railway Co.*, 16 C. B., N. S., 692; *Cotton v. Wood*, 8 id. 568; *Howells v. Landore Steel Co.*, L. R., 10 Q. B., 62.

Counsel also contended that the damages were excessive.

*J. W. Lusk*, for the respondent:

The general rule that a railroad company is liable for an injury to its servant caused by want of repair in the road, or by the defective character or condition of machinery or appliances about which the employee is directed to work, is not questioned by the defendant; but it seeks to establish an exception for which there is no authority. "A public company, like a canal or railway, who are allowed to take tolls, owe a duty to the public to remove all obstructions in the canal or upon the railway, *although not caused by themselves or their servants*, but by those who are lawfully in the use of the canal or railway, *or by mere strangers*." "Nor can a railway company excuse themselves from liability for injury to passengers carried over any part of their road, by showing that the particular neglect was that of a servant employed and paid by a connecting road." 1 Redfield on R. W., 602; *McElroy v. Nashua & Lowell Railroad Corp.*, 4 Cush., 400; *Railroad Co. v. Barron*, 5 Wall., 90. A railway passenger carrier is responsible for the sufficiency of a carriage which it borrows and uses, to the same extent as for its own. *Jetter v. N. Y. & H.*

*Railroad Co.*, 2 Keyes, 154. In *Murch v. Concord Railroad Corp.*, 9 Foster, 9, where a passenger had suffered an injury in attempting to get on the cars of one company while it was using the road of another company, by contract with the latter, through a defect in the construction of such road, it was held that he could not maintain an action against the company owning the road, there being no privity of contract between it and plaintiff; but that the remedy was against the company which was carrying the plaintiff as a passenger.

TAYLOR, J.   The learned counsel for the appellant insists that the court below erred in holding that the defendant was liable to the plaintiff for an injury resulting from the insufficiency of the railroad track which it did not own, and was not bound to keep in repair; and *secondly*, that the court erred in refusing to instruct the jury, " that if they found that negligence of the defendant's employees caused the injury, or contributed to it, the defendant would not be liable," and because, in reply to such request, the judge said he did not think there was any negligence on the part of anybody running that train, " I mean the train hands; that the negligence, if any, was higher up; " and *thirdly*, that the damages were excessive, and that the verdict should have been set aside, and a new trial granted, for that reason.

1. We do not think the first point well taken.   The authorities are quite uniform, that where one railroad company uses the track of another company for the purpose of transporting passengers or property, the company transporting the persons or property is liable for any damages which may be sustained, either by the passengers or by the owners of the property so transported, caused by any defects in the road of the other company so used, or by the negligence of the servants or employees of such other company occurring during such transportation. Redfield, in his work on the law of railways, says:   " The rule of law in regard to passenger-carriers who run over other

roads than their own, seems now to be pretty well established, that the first company is responsible for the entire route, and must take the risk of the negligence of the employees of the other companies." 2 Redfield on the Law of Railways, 303. See *Railroad Co. v. Barron*, 5 Wall., 90; 2 Redf. Am. Railw. Cases, 471; *Ill. Central Railroad v. Kanouse*, 30 Ill., 272; *McElroy and wife v. Railroad Corp.*, 4 Cush., 400. We are of the opinion that proper regard for the safety of both passengers and property transported by railway companies, requires that such rule should be maintained; and that when a corporation of this kind undertakes to transport passengers or property from one point to another, such passengers and the owners of such property have the right to throw upon such corporation the responsibility of seeing that the roads used by them for such transportation, whether owned by them or not, are safe and in good repair, and that those having them in charge, whether the employees of such company or not, shall exercise due care and diligence to secure the safe transportation of such persons and property. Any other rule would, we think, be destructive of the rights of the public in the use of railroads.

We are also of the opinion that the same rule should apply as between the railroad company and its employees; and we do not understand the learned counsel as contending that a different rule should apply, as between the railroad company and its employees, and the railroad company and passengers and freighters. In the case at bar, there would seem to be every reason for holding that the same rule should apply. The company, when the accident happened, was running its trains over a short line of road, which terminated at the main track of its road, which was never used as a railroad for any purpose except as the trains of the defendant ran over it, and for all practical purposes was of no use as a railroad except as used by the defendant. There is no evidence that the plaintiff had any knowledge that the road did not belong to the defend-

ant, and he had every reason for supposing it did. He was directed by the proper agents of the defendant to assist in running its cars and engines over it. As between itself and its employees, who were directed to use the road in the business of the defendant company, such employees have the right to treat the road as the company's road, and the company as to its employees was bound to see that such road, whilst so used for its benefit by its employees, was in such condition as not to unnecessarily endanger their lives or limbs. There was no error, therefore, in refusing to nonsuit the plaintiff or direct a verdict in favor of the defendant, as there is no claim made by the counsel for the defendant that there was not sufficient evidence of negligence to carry the case to the jury on the part of the defendant, in the matter of keeping the track of such road in a safe condition, if by law they can be held responsible for its not being in a safe condition.

2. The exception to the refusal of the learned circuit judge to give the instruction asked, and to his remarks accompanying such refusal, we think must be held to be well taken; especially as his general charge was entirely silent upon the point sought to be raised, and which we think the defendant, upon the evidence in the case, had the right to insist should be submitted to the jury. We have very serious doubts whether the defendant had the right to demand of the court an instruction that, if the negligence of a coëmployee contributed to the injury, the plaintiff could not recover; but we are very clear that he had the right to demand an instruction that if they found from the evidence that the accident happened by reason of the negligence of a coëmployee, then the plaintiff could not recover. As the instruction asked was in the alternative, if the learned judge had simply denied it, without comment, we should have hesitated to reverse the judgment for that cause; but as the learned judge, as a matter of law, decided that there was no evidence of any negligence on the part of any persons in charge of or running the train at the time, which could

have caused the accident, we are of the opinion that he took from the jury the question of negligence on the part of the conductor in charge of the train at the time, which negligence the jury might have found, from the evidence, caused the accident. Both parties agree that under the law of Illinois, where this injury to the plaintiff occurred, an employee cannot recover for an injury happening to him by reason of the negligence of one of his coëmployees; nor is there any dispute that the conductor in charge of the train at the time, and the fireman, were coëmployees within the meaning of the law.

There is evidence that the conductor was advised, before he went to work on this road, that it was not in a very safe condition, and that he was cautioned to run slowly over the same. The evidence also shows that when the accident happened, he was running the train at a speed which the conductor himself considered unsafe, taking into consideration the condition of the track, and the fact that the train was backing instead of going forward; and it tends also to show that the accident happened by reason of the lateral pressure against the rails, occasioned by the backing of the train at a speed which was not safe. Upon this evidence, we think it was for the jury, and not for the court, to say whether there was negligence on the part of the conductor in the running of the train, and whether such negligence caused the accident which resulted in injury to the plaintiff. The case of *Durgin v. Munson*, 9 Allen, 396, decided by the supreme court of Massachusetts, was similar in principle to the case at bar, and that court held that the question as to whether the negligence of the coëmployee caused the injury should have been submitted to the jury.

In that case, the plaintiff, an employee of the company, had been injured by an engine running off a turn-table, when such employee was engaged in turning the same. His claim to recover against the company was based upon an alleged insufficiency of the brake on the engine, to keep the same in place whilst it was being turned upon the table. The court held that

it was competent for the defendant to show, as a matter of defense, that the person who had charge of all the engines, had given instructions to the engineers in charge of the engines, before the accident happened, to have the wheels of their engines blocked while turning on the turn-table, and that the accident occurred from the failure of some servant of the defendant to obey such instruction, although such instruction was not known to the plaintiff, and notwithstanding there was proof of the insufficiency of the brake on the engine. The learned judge who delivered the opinion of the court in that case, says: " The defect in the engine, which the plaintiff alleged as the cause of his injury, was the insufficiency of the brake to prevent the engine from running off while it was turned on the turn-table. The defendant proposed to show that the person who had charge for him of all the engines on the road, had given instructions, before the accident, to the engineers, to have the wheels of their engines ' chocked ' while turning on the turn-table, and that this accident occurred by the failure of some servant of the defendant to obey such instructions. The court ruled the evidence incompetent, as it was not shown that the instruction was given or known to the plaintiff. But proof that the accident which caused the injury to the plaintiff was caused by the neglect of a fellow servant, would have been a defense to the action; and the offer went to that extent. The defects of the engine in the abstract were not the gist of the plaintiff's complaint, but its defects at the time, and for the service in which the defendant allowed it to be used when it ran on the plaintiff. If it were fit and sufficient for use in the manner in which the defendant then allowed it to be used, its insufficiency for other service at other times would not concern the plaintiff. Now it is plain that a machine may be safe and fit for one use, when it is not for another."

Applying the principle of that case to the case at bar, there was certainly some evidence in the case to go to the jury

upon the question as to whether the accident did not happen by the negligence of the conductor of the train. It is probable that it would not be negligence on the part of the company, for which they could be held responsible to their employees, that they did not keep this short track of road, which was seldom used, and then only for a particular purpose, in that complete state of repair in which the law would require them to keep that part of their road which was used constantly for all the purposes of transportation of passengers and freight. The question in the case at bar is, whether it was in a reasonable state of safety for the purpose for which it was used, and whether, in the use of this track, the company had directed their conductors and engineers to run carefully and slowly over the same, and the track was in such a state of repair that it might be used safely in the manner their employees were required to use it. We are of the opinion that the company would not be liable for an injury which happened to one of its employees by reason of the negligence of a coëmployee in running with great speed over such track contrary to the orders of the company.

We have examined, with some care, the question as to whether mere contributory negligence on the part of a coëmployee or servant of the defendant would be a good defense for the master in an action by an employee or servant for an injury received on account of the alleged negligence of the master. We have been able to find but one case in which the question has been plainly before the court, the case of *Paulmier, Adm'r, v. The Erie R. R. Co.*, 5 Vroom, 151. The court held in that case, "that where the track of the company over a trestle-work was not capable of supporting an engine, and the engineer in charge had orders not to put his engine thereon, which orders he disobeyed, and the intestate of the plaintiff, who was a fireman on said engine, and who was unaware of said orders or of the danger, was thereby killed, the said trestle-work giving way, the plaintiff was entitled to

recover, on the ground that such death was occasioned in part by the want of care in the defendant, the railroad company, with respect to said trestle-work;" and it was further held as a general rule of law, "that where a servant receives an injury occasioned in part by the negligence of his master, and in part by that of a fellow-servant, he can maintain an action against his master for such injury, and that contributory negligence to defeat a right of action" must be that of the party injured.

This case may appear to be in conflict with the opinion cited in 9 Allen, *supra*, but it is not so in fact. Chief Justice BEASLEY, who delivered the opinion, announces the same principle which was announced in the case in Allen. He says: "The principal ground on which a new trial is asked in this case is, that it was clearly shown by the evidence that the accident by which the intestate lost his life was occasioned, not by the negligence of the defendants themselves, but by that of their employees. They said that their road-bed extending over the water was properly constructed *in view of the purpose for which it was designed, and that it was misapplied to another purpose by their servants contrary to their orders. If these were the facts of the case, the position would be well taken.*" The learned chief justice afterward gives his reasons for holding that the rule above claimed by the defendant was not applicable to the facts of the case, and that the defendants were guilty of negligence, although they had directed their engineers to stop their locomotives at the end of the trestle-work, and not run them onto it. He says: "Stripped of all verbal disguises, the arrangement is this, that by their arrangements they required their employees almost hourly to run their engines to the brink of danger, and that their orders were to stop there. The road-bed over the water was supported by wood-work which the defendants admit was dangerous to a locomotive, and what they required was that the locomotive should be stopped on the fast land.

As occasion called for it, in pushing the loaded cars out over the water, the engines were brought necessarily to this line between the water and land. Here was a danger constantly recurring, just as imminent as though the requirement had been to run these engines onto the edge of a precipice. And to make the matter worse, the danger in this case was entirely latent; there was nothing to indicate that this part of the road extending beyond the land would not support a locomotive. It is obvious that it required the constant exercise of skill and vigilance to avoid this unnecessary risk, and yet it is not pretended that there was any notification to the engineers and other employees, of the insecurity of this part of the road-bed. . . . It is manifest from the evidence on both sides, that adequate means to inform the parties in charge of these locomotives of the peril at hand were not used; for several of the engineers themselves testify that occasionally they put their engines upon this insecure structure. Some of them said they were not aware of its insecurity. These circumstances seem to me to constitute a legal default in the defendants." In this case it was properly held to be negligence on the part of the corporation to require its employees to run their engines to the very edge of a great danger, without providing any proper means for arresting the locomotives at the exact point of danger, and without informing their employees that if they passed the point indicated for stopping the locomotives, there would be imminent danger of the destruction of both themselves and the engines in their charge. The reasoning in this case, as applied to the facts of the case at bar, would go to this extent and no farther, that if the conductors and other employees of the defendant, who were directed to run trains over this short track, and, when directed to do so, were also directed to run slow, did not understand, and ought not, from the fact of such direction, to have understood, that such track was not in a condition to permit of the running of trains rapidly over the same without incurring

.danger, then the fact that the conductor or engineer disobeyed the order to run slowly would be no defense to the action, if the jury found that the track was not in such a state of repair, in view of the purposes for which the track was used, as to permit trains, used with ordinary care, to pass over the same with safety.

After giving the question such consideration as we have been able to give, we are inclined to hold, as was held in the case of *Paulmier v. The Erie R. R. Co.*, *supra*, that where the negligence of the railroad company directly contributes to the injury of an employee, the company must be held liable, though it also appears that the negligence of a coëmployee contributed to such injury, and that the rule is universal, that contributory negligence, to defeat an action, must be the negligence of the plaintiff or of some other person for whose acts he is responsible.

3. Upon the question of damages, we are unable to say from the evidence and verdict whether they are excessive or not, as the amount of damages which should be given depends very much upon the nature of the injuries received. If they are in fact permanent in their nature, and materially interfere with the natural and ordinary use of the plaintiff's arm, we would not feel justified in holding that they were excessive; whereas, if the injuries were temporary in their nature, and resulted in no permanent disablement of the plaintiff in any respect, we might be constrained to hold the damages were excessive. We do not, however, wish to be understood as giving any opinion upon that subject.

For the error of the court in taking away from the jury the question as to whether the negligence of the conductor in charge of the train caused the accident and the injury to the plaintiff, the judgment must be reversed.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.

RYAN, C. J., took no part.