# The Mobile and Montgomery Railway Company v. Smith.

## Action for Damages.

1. *An employee can maintain action for damages against employer when in fault.*—An employee, who is injured in the course of his service, has recourse against the employer for damages when the injury is caused by the fault of the employer; but not, when it is caused by the fault or negligence

[Mobile and Montgomery Railway Co. v. Smith.]

of another employee, unless the employer is chargeable for the employment of an incompetent person.

2. *A corporation is liable for damages caused by the employment of unfit persons.*—If a railroad corporation authorizes an officer to employ persons to maintain and repair the road, and to carry on its business, and he employs, or retains persons unfit for the service in which they are engaged, and injury results to another employee of the corporation from this cause, it is liable. The officer in such matters is substituted for the corporation, and his negligence is the negligence of the corporation.

3. *A corporation is liable for damages arising from the improper selection of an officer.*—When the duties entrusted to an officer are such as can not properly be performed by the corporation itself, then his negligence is not that of the corporation, unless it has failed to exercise due care in the selection of a proper officer.

4. *The nature of the duties required, determines the character of the employee.*—It is not the relative grades of different officers or employees, or the subordination of the one to the other, which determines when they are fellow-servants in relation to their common employer; but it is the nature of the duty intrusted to them.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

The plaintiff, Willis Smith, brought suit in the Circuit Court of Montgomery county against the Mobile and Montgomery Railway Company, to recover damages for an injury sustained while engaged in its service. He was employed as a fireman on an engine attached to a construction train of the defendant. On the second day of March, 1875, this train was sent from Montgomery, under the charge of one Mitchell, who was the engineer, to Letohatchie, thence to other stations down the road until it arrived at Greenville. There Major O'Brien, as supervisor of the road, assumed control of it, and continued the journey. In the meantime telegrams were sent by Col. G. Jordan, the chief engineer and superintendent of the road, directing O'Brien what to do. He replied at various stations, reporting the progress of the train. It was known that the rains had damaged the road, and the train was sent for the purpose of aiding in making repairs. From Sparta, the section-master, Price, telegraphed to another section-master (Johnson), to come to his assistance, and to bring all the hands he could get. This telegram was received by Johnson at Evergreen, who handed it to O'Brien. The train, having on it O'Brien, Johnson, Mason, a bridge-builder, and Mitchell, the engineer, set out in the direction of Sparta. It ran at a speed variously estimated at eight, ten, twelve and fifteen miles an hour. Passing over Johnson's, it had reached a part of Price's section, "when those on the engine suddenly discovered that the bed had been washed from under the rails. The damage to

[Mobile and Montgomery Railway Co. v. Smith.]

the road was of such a character that it was not perceived until the train had approached to a distance of one hundred and forty feet of it. It was impossible to stop the train at the rate of speed it was then running, before it ran into the wash." The plaintiff was "thrown violently between the engine and tender, and greatly mangled and injured. Had the speed of the train been only three or four miles an hour it could have been stopped before running into the wash, if there had been a brake on each car." There were seven cars, and no brake except on the tender of the engine. There was proof that O'Brien, Mitchell and Price were competent, prudent and careful men in their respective spheres of duty. There was evidence also, that "G. Jordan was an experienced, careful, prudent and competent man for the post of chief engineer and general superintendent;" and that "he had the power of appointment and removal of all those connected with the running of the road and the care and preservation of tracks and machinery."

The court, among other things, charged the jury: "That the defendants, a corporation, having employed Jordan as chief superintendent, and O'Brien as chief section-master of · their railroad, to whom was delegated the power of supervision and the power of appointment and dismissal of persons employed under them, Jordan and O'Brien can not be considered for the purposes of this suit as servants, they were exercising the attributes of master, and not persons employed in the same general business. Any act of negligence committed by Jordan and O'Brien, or either of them, would be the act of the corporation and not the act of a fellow-servant, employed in the same general business."

To this part of the charge of the court, the defendant excepted.

The plaintiff requested the court to give the following charge, which he offered in writing, to-wit:

"That if the jury find, from the evidence, that by the negligence or want of care and prudence of Major O'Brien or Col. Jordan, the accident occurred, then, although the fault of the fellow-servant, Price, contributed to bring about the injury, the plaintiff would be entitled to recover, and the fault of the fellow-servant would not excuse the defendant under such circumstances." Which charge the court gave; and to the giving of this charge the defendant excepted.

The defendant then asked the court to give the following charges, which were in writing, to-wit:

"A. If the jury believe the evidence before them, on the

snbject of the nature of the employment of the plaintiff, Mitchell, O'Brien and Price by the defendants, that they were all servants of the corporation, that the plaintiff can not recover for any act of negligence either of omission or commission of either, or all, or any one or more of them, if it appears from the evidence that, in employing and retaining them in employment, the defendant took due and proper care to select and return prudent and competent men for the several employments in which they were respectively engaged.

" C. The natural import and meaning of the note written by Price to Johnson is, that the washes referred to were at or below Sparta, especially if the jury believe the evidence in connection with the duty of section-master, and that no one was seen or was on the track on Price's section above Sparta. And the receipt of this note justified O'Brien in concluding that the washes were below Sparta."

These charges the court refused to give ; and to the refusal of each the defendant excepted.

SEMPLE & SEMPLE, for appellant.

THOMAS H. WATTS, JR., and WATTS & WATTS, for appellee.

MANNING, J.—This court recognizes the doctrine, that an employee who is injured in the course of his service, has recourse against his employer for damages, when the injury is caused by the fault or negligence of the employer, but not when it is caused by the fault or negligence of another of the employees, a fellow-servant,—unless, the employer be chargeable with blame, for having employed as such fellow-servant, a person incompetent or unfit for the business to which he is assigned.—*Walker v. Bolling*, 22 Ala. 294 ; *Perry v. Marsh*, 25 ib. 659. It is also held by this court, that in an action for damages in such a case, by an employee against his employer, " the *onus* of proving negligence is on the injured servant."—*Mobile & Ohio R. R. Co. v. Thomas* (42 Ala. 672.)

Without controverting these propositions, counsel for appellee insist that the injury to their client was caused by the negligence or want of due care, in this instance, of the superintendent of the railroad, who was the chief executive officer of the company, with the power to appoint and remove all persons acting under him, or of O'Brien, who was supervisor of about one-half of the road, whose duty it was to look after and keep in good repair, that part, and who had power to

appoint and discharge the men that were to do the work under his direction. And it is contended that these persons were not "fellow-servants" of Smith, a brakeman, but supervisors who represented the company itself, and whose negligence is legally imputable to the company as a fault committed by it. This was in effect the substance of the charge which the circuit judge gave to the jury.

The subject of such a qualification of the general rule has been much discussed, and the decisions in regard to it outside of this State, are not harmonious. In *Walker v. Bolling, supra,* this court held that where there is a general manager or superintendent, who is invested by the common employer with the duty and authority of employing and dismissing the inferior agents and servants who are under him, the master is responsible for acts of negligence on the part of the superintendent, in failing to exercise due care and diligence in the employment of competent agents, or in not dismissing those who are proved to be incompetent.

In the present case, there has been no negligence in this particular. It is proved that Jordan the general superintendent, O'Brien the road-supervisor, Price a section-master to whom blame is ascribed, and Mitchell the engineer of the train, were all of them competent, prudent and experienced in the several duties to which they were respectively appointed. And these are all the persons, in any way chargeable with the mishap,—who were concerned in the service,—the examination and repair of a railroad damaged by recent flooding rains—in the course of which the disaster happened, of which appellee—(plaintiff in the Circuit Court,)—was the victim. Although O'Brien had authority to employ and dismiss the men who worked in repairing the road, Mitchell, the engineer and Smith a brakeman, of the train, did not come within that class. They, like O'Brien and Price, received their appointment from Jordan the general superintendent, and were removable by him. Is it not obvious then, that O'Brien is to be considered, within the meaning of the rule referred to, as a fellow-servant of Smith.

Sherman & Redfield, in their work on Negligence, (which appellant's counsel rely on for authority in support of their views) say: "A 'fellow-servant' within the meaning of the rule . . . is generally held to be any one serving the same master and under his control, whether equal, inferior or superior to the injured person, in his grade or standing. No extent of difference in their wages, social position, or work, affects the relation of servants of the same master, so

long as they are employed in one general business. Thus a merchant's clerk, though (as is frequently the case) the equal of his employer in social position, is, in the eye of the law, a fellow-servant with the boy who sweeps out the store and makes the fires. So the engineer and brakeman of a train, the first and third engineers of a steamship, and the foreman and subordinate workmen in a shop, are all fellow-servants within the meaning of the rule.—(2nd ed. § 100.) And in the elaborately considered case of *The Mobile & Ohio Railroad Co. v. Thomas, supra,* this court, through WALKER, C. J., said : " The proposition which bases the liability on the superiority of grade of the negligent servant and the subordination to him of the injured servant, is, in our judgment, not founded in adequate reason. It can make no difference whether he is injured by the carelessness of another brakeman in some remote part of the train, or of the engineer, or conductor ; nor can it make any difference, whether a fireman is injured by the negligence of the engineer who directs him, or of the machinist who is charged with fitting the engine for the road. . . . The employer's obligation to his servant in reference to his fellow-servants, must be the same in all the cases. . . . The master can do nothing more for the safety of himself or his family and property, than to be careful to select competent and fit servants. To inflict a penalty upon him for not doing more for his servant, is unreasonable. . . . After the employer has furnished competent and fit employees, the prevention of negligence on the part of any of them is certainly as much within the power of the others, as in that of the employer."—(Pages 723–4.)

Hence, according to the law as heretofore declared by this court, O'Brien, the road-supervisor, was, within the meaning of the rule, a fellow-servant of Smith, the brakeman ; and in respect to O'Brien the circuit judge erred in his charge to the jury.

Was the charge erroneous also, in ruling that the company was liable for the negligence, if in the opinion of the jury there was any, on the part of Jordan, its superintendent and general manager ? He was possessed of a much larger authority than O'Brien and more directly represented the company. But he was also in its service. If it authorized him to exercise the functions which properly belonged· to the company itself, and which it, by its board of directors or president might perform,—as the selection and employment of the persons who were to do the work of building, equipping, keeping in repair and operating its railroad, and through

want of care and due diligence, he should employ incompetent and unfit persons, whereby injury is done to others of its employees, the company would be liable therefor to them. He would be its substitute in the performance of such an office. So perhaps he would be when intrusted with the duty of procuring the materials for the work. But a railroad company, or the stockholders and directors thereof, are not supposed to be civil engineers, or to possess the scientific or mechanical skill, necessary to the building, repairing and operating of a railroad. The company is expected to employ—and must rely on—other persons who possess such skill, to do such work; while its duty further is, to procure and furnish the requisite and proper materials, and to pay the wages of the numerous employees. Was Jordan on this occasion, performing a function of the company, or a duty properly belonging to him as a skilled engineer in its service?

Extraordinary rains had caused great damage along the extensive tract of the railroad; the road-bed was in many places overflowed and in some washed away; and some of the bridges were supposed to have been carried off or undermined. Stopping the transportation trains along the line, Jordan sent out Mitchell with his locomotive and some platform cars, and with Smith as brakeman, to report to O'Brien, the supervisor, whom he instructed, by telegraph, to take the train and examine the road and cause it to be repaired. And it was while this service was being performed under the particular direction of O'Brien and the general instructions of Jordan, who from time to time communicated by telegraph from Montgomery, with O'Brien at different places along the line, and when they had come to a part of the road of which Price was section-master—and where he had failed to place any person or signal, as it was his duty to do, to give warning of the danger resulting from the condition of the road-bed that the accident happened by which the plaintiff, Smith, was unhappily injured. From the nature of the service, it was obvious to Smith, as well as to all those with him, that it was one of some danger. In the performance of it, Jordan was co-operating in his capacity of engineer and superintendent in the service of the company; and he seems to have been generally very vigilant and prudent in doing so. He was not exercising a function of the company, but performing a duty incumbent upon him as one of its skilled servants. He was indeed acting as completely and properly in the line of his employment, as O'Brien was in his, and this in a transaction, for the right performance of which the com-

[Mobile and Montgomery Railway Co. v. Smith.]

pany must employ and depend upon persons scientifically and practically trained and skilled for such work. It follows that he and Smith, being in the employment of the same person, and engaged in the same business of their common employer, they were within the meaning of the rule on the subject, fellow-servants. And since it is admitted that Jordan was, by his skill, experience and prudence a competent and fit person for the position of engineer and superintendent, and the company therefore acted with due care and diligence in employing him, it is not easy to see upon what just principle, it should be charged with an injury which by his negligence, if he was guilty of any, had happened to another of its employees.

It is natural that the poor man who is the sufferer by such a misadventure, should be the object of general sympathy. The sentiment is a generous one. And the law gives him recourse for damages against the individuals by whose tortious negligence, if there were any, the injury was caused. but the courts of the land have no just authority to impose the duty of making reparation for it, upon a defendant who has been guilty of no want of due care in the exercise of rights and powers with which the legislature has expressly invested it.

Some minds find it difficult to understand why an employer,—a railroad company, for instance,—should not be responsible to those in its employment for accidents befalling them, in the same cases and to the same extent, as to the persons not in its service. The different relations of the parties toward each other, are not kept in view. The customers of a railroad and the public for whom the company acts as carrier of persons and property, pay it to perform such services for them. Its employees, on the contrary, are paid by the company for the exertion of their skill and diligence in its behalf, for the very purpose of making repairs, completing equipment, preventing accidents and enabling it safely and efficiently to fulfil its engagements. The need of this skill and diligence implies imperfection without them, in the work upon which, or the service for which the employees are engaged; and they are paid acccording to the nature and exactions of the service. Generally, also, there must be co-operation with them on the part of other employees of the company in the work to be performed. For these reasons, it has been often ruled, that as between their employers and themselves, employees take the risk of any damage they may sustain from the perils incidental to the

[Bishop v. Wood.]

service in which they engage including those arising from the negligence of others engaged therein, unless they are chargeable upon the misconduct or negligence of the employer. This is now well settled law. Obviously, though such a rule is not applicable between the company and those not in its employment.

Let the judgment of the Circuit Court be reversed and the cause be remanded.