# Geo. Pacific Railway Co. *v.* Davis.

*Action by Brakeman against Railroad Company, for Damages on account of Personal Injuries.*

1. *Averment of negligence in complaint.*—In an action by a brakeman against a railroad company, for damages on account of personal injuries, an averment in the complaint that the defendant, "by its neglect and want of care, allowed its roadway to be and become greatly out of repair, unsafe and dangerous, and by reason thereof plaintiff, while in the performance of his duties as such brakeman, was violently struck against a projecting rock" and injured, is sufficiently certain and definite in its description of the defect which caused the injury.

2. *Same.*—If a count contains a sufficient averment of negligence on the part of the railroad company, in allowing a stone in the side of a cut to project in dangerous proximity to the track, whereby plaintiff was struck and injured while ascending to the top of a car by a ladder on the outside, an additional averment of negligence on the part of the conductor, in ordering him to ascend at that time and

[Geo. Pacific Railway Co. v. Davis.]

place, though defective, does not destroy the legal sufficiency of the count.

3. *Projecting rock as defect in roadway.*—A rock in the side of a railroad cut, projecting far enough to endanger brakemen in the discharge of their duties while ascending or descending ladders on the outside of passing cars, though not far enough to touch the cars, is a defect in the roadway which renders the railroad company liable for resulting injuries.

4. *Same; knowledge or ignorance of brakeman.*—A brakeman is not chargeable with knowledge of such projecting rock, nor is his ignorance of it imputable to him as contributory negligence, since he has a right to assume that the road-bed and all appliances are in a reasonably safe and suitable condition; but, if he had actual knowledge of it, and continued in the service after the lapse of a reasonable time for its removal, he will be held to have assumed the additional risk.

5. *Railroad rules regulating duties of brakemen.*—Rules of the railroad company requiring brakemen to be "constantly on the alert, carefully observe the engineman's signals, never sleep at their posts, not leave their brakes while the train is in motion, nor take any other position on the train than that assigned them by the conductor," being two out of a series of five hundred rules contained in a printed book of 129 pages, and intended for the regulation of all branches of the defendant's business, are not relevant to the question of contributory negligence on the part of the plaintiff, who was injured while ascending a ladder on the outside of his car; especially when it is not shown that he had any knowledge or notice of such rules.

6. *Same; habitual or frequent violation, with knowledge of conductor.* Contributory negligence can not be imputed to the plaintiff on account of a violation of such rules in leaving his post of duty, when it appears that by the general practice on the defendant's trains, without objection from the conductor, brakemen went into the caboose where he was during inclement weather, when their duties did not require their presence on the top of the cars, and remained until he gave them orders to go to their cars; and that the plaintiff, on the occasion when he was injured, had thus been in the caboose with the conductor, and was injured while attempting to get on top of his car, in obedience to the order of the conductor.

7. *Same; delay in obeying order of conductor.*—A delay of a moment or two by the plaintiff in obeying the order of the conductor, while putting on his overcoat and gloves, necessary precautions against the inclement weather, does not constitute contributory negligence on his part, although the slight delay may have caused his collision with the projecting rock in passing it.

8. *Conductor's assent to violation of known rule by brakeman.*—The conductor's assent to the violation of a known rule by a brakeman, does not relieve it of the charge of negligence.

9. *Burden of proof as to contributory negligence.*—The *onus* of proof as to contributory negligence is in all cases on the defendant, though the plaintiff's evidence sometimes relieves from the necessity of discharging it.

10. *Knowledge of defects by conductor.*—A conductor in charge of a railroad train is not chargeable with knowledge of every defect in the roadway, or things therewith connected, because the railroad company is chargeable with notice of it.

11. *Error without injury*, in charges given or refused, is not ground of reversal.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellee, Thos. F. Davis, against the appellant railway company, and sought to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant in allowing a rock to project too far in one of the cuts on its road way. There were two counts in the complaint, and to each of these counts the defendant demurred, and its demurrer was overruled by the court. The substance of these demurrers, and the rulings of the court thereon, and all the facts, as shown by the bill of exceptions, are sufficiently stated in the opinion.

Upon the evidence as adduced, the court gave the following charges in writing at the request of the plaintiff: (1.) "It is the duty of railroad companies so to construct their tracks, ways, &c., as to make them reasonably safe for their employès in the performance of their duties, and so as not to expose them to unnecessary danger." (2.) "It is the duty of railroad companies to use reasonable care and diligence in the construction and preservation of their tracks, ways, &c., so as not to expose their employès to unnecessary danger in the performance of their duties as such." (3.) "It is the duty of the defendant to keep its road, works, &c., and all portions of its track in such repair as reasonably to secure the safety of their employès, passengers, &c." (5.) "That the defendant is responsible for the due diligence in the maintenance of its tracks, and is chargeable with knowledge of defects in its track or ways, which might have been discovered by such diligence, whether actually known to it or not." (6.) "The duty of the servant is obedience; and if the master orders him to perform a dangerous service, and he obeys, and is thereby injured, the law will not deny him a remedy on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it." (8.) "If the jury believe from the evidence, that just before the accident occurred, the plaintiff was a brakeman, and one Edmonds was a conductor on the train, and the plaintiff was in the caboose by the consent and permission of the conductor, Edmonds, the plaintiff was not thereby guilty of contributory negligence, though there may have been a rule of the company requiring him, the plaintiff, to be always at his brake when the train was in motion, of which he had no notice. If there was any such rule as that above referred to, it was the duty of the defendant to inform the plaintiff of it." (9.) "The plaintiff was not guilty of contributory negligence in being in the caboose just before the accident occurred, though the jury may believe that he was a brakeman on the train, and that there was a rule of the company that he should

always be at his brake when the train was in motion, if it is not shown that the plaintiff had notice of such rule, and the jury believe from the evidence that the conductor on said train was in the habit of allowing the brakemen to ride in the caboose, and that the plaintiff just before the accident was riding in the caboose with the consent and permission of the conductor." (11.) "The conductor, Edmonds, was charged with the administration of the company's rules, while running the train, and his assent that a brakeman should vary from such rules was the assent of the company, and the plaintiff was not guilty of contributory negligence in so varying from it, unless the jury believe from the evidence that the plaintiff knew that the conductor was violating such rules in giving such permission." (10.) "The conductor, Edmonds, was charged with the administration of the company's rules while running the train, and his assent that a brakeman should vary from such rules was the assent of the company, and the plaintiff was not guilty of contributory negligence in so varying from it."

The defendant excepted to each of these charges as given, and also reserved exceptions to the refusal of the court to give each of the following written charges requested by it: (1.) "Gentlemen of the jury, the theory of the plaintiff's complaint is, that he was rightfully at the place where he was when injured, by reason of the alleged negligence of the defendant; and if you believe from the evidence that he was not, when injured, where he ought to have been, in the proper discharge of his duty as brakeman on the defendant's train, you must find for the defendant." (2.) "If you believe from the evidence that the plaintiff's duty as brakeman on the defendant's train required him to be on top of the train, whilst the train was in motion between stations on the railroad, and that this duty and business as brakeman did not require him to be in the caboose; and that when ordered out on top of the train he was in the caboose merely for his own comfort or convenience, or merely because the conductor of the train allowed him to be there—he having no business or duty to perform there—then I charge you that the plaintiff has failed to make out his case, and he can not recover." (3.) "I charge you, that if you believe from the evidence that the plaintiff, in the discharge of his duty as brakeman, ought to have been on the top of the train just before and at the time he was ordered from the caboose by the conductor, and that the conductor's order to the plaintiff to get out on top of the train and put on the brakes was rendered necessary by the plaintiff's own neglect in not being already at his post of

duty on top of the train; then the plaintiff can not complain of such order, and can not recover a verdict by reason of the alleged negligence of the conductor in giving such order; and I further charge you, that if you believe such a state of facts from the evidence, your verdict must be for the defendant." (4.) "To entitle the plaintiff to recover under the second count of the complaint the evidence must reasonably satisfy the jury that the cut on the defendant's road through which the train was passing when the plaintiff was injured was in a dangerously defective condition, and that the conductor had reasonable notice of such condition; and the burden is on the plaintiff to prove such notice." (5.) "Under the evidence in the case, the plaintiff can not recover under the first count of the complaint." (6.) "Under the evidence in this case, the plaintiff can not recover under the second count of the complaint." (7.) "If it appears from the evidence to your reasonable satisfaction, that just before the plaintiff started out on top of the train to put on the brakes, he was in the caboose for some individual purpose only, where his duty did not require him to be, and that instead of being on the ladder of the car where the accident occurred he ought then to have been on top of the train, your verdict must be for the defendant." (8.) "If you believe from the evidence that, at the time of the accident to the plaintiff, his duty, as brakeman, required that he *should then* have been stationed on top of the train and not elsewhere, your verdict should be for the defendant." (16.) "If you believe from the evidence, that the plaintiff's proper place on the train, just before and at the time he received the injury of which he complains, was on top of the train, your verdict should be for the defendant." (19.) "Even though you should believe from the evidence that the defendant has been guilty of negligence as claimed in the complaint, still your verdict should be for the defendant, if you believe from the evidence that the plaintiff, just before and at the time of the injury, ought to have been out on top of the train." (22.) "In cases where an employer establishes a rule for the protection of his employès from some danger or risk, incident to the service, or which would not ordinarily be known, or apprehended by the employè, then it is the duty of the defendant to specially notify the employè of such rule, and the employè is not responsible, without such notice, for disobeying such rules. But this principle does not go to the extent of requiring the employer to see that his employè knows his ordinary duties—every employè being supposed to know his ordinary duties without special notice from his employer—and if you believe from the evidence that one of the

[Geo. Pacific Railway Co. v. Davis.]

ordinary duties of the plaintiff required him to be and remain on top of the train, whilst it was in motion, and that the plaintiff neglected this duty, and that the injury complained of resulted proximately from such neglect, your verdict must be for the defendant." (24.) "If you believe the evidence, you must find for the defendant." (25.) "The burden is on the plaintiff to establish to your satisfaction by the evidence every material allegation of his complaint—and every material fact upon which his right of recovery depends—and if you believe from the evidence, that the plaintiff would not have been injured, if he had been on top of the train when it entered the cut; and if the evidence leaves your minds in doubt as to whether or not he was ordered out on top of the train, before it entered the cut, you should find for the defendant." (28.) "The burden of proof is on the plaintiff to establish by a preponderance of the evidence that he was at his post of duty when he was injured; and if the testimony upon this point is equally balanced, or preponderates in favor of the defendant, your verdict should be for the defendant."

There was judgment for the plaintiff; and the defendant brings this appeal, and assigns the various rulings of the court as error.

JAMES WEATHERLY, for appellant.—1. The court erred in overruling the demurrers to the first and second counts of the complaint.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 708; *C. & W. R. R. Co. v. Bradford*, 86 Ala. 580; *Ga. Pac. Rwy. Co. v. Propst*, 85 Ala. 203. 2. The plaintiff was guilty of contributory negligence, and, therefore, charges 1, 2, 3, 7, 8, 16, 19, 22 and 28, requested by defendant, should have been given. *Wilson v. L. & N. R. R. Co.*, 85 Ala. 269; Beach on Contributory Negligence, p. 368, § 137; *Ib.*, p. 369, § 138; *Ib.*, p. 374, § 141. 3. Charges numbered 1, 2, 3, 4, 5, 6, 8, 9, 23 and 24, requested by defendant, should have been given, and charge numbered 6, asked by plaintiff, should not have been given, since it does not appear from the uncontradicted evidence that the defendant was guilty of any negligence of which the plaintiff in this suit can complain, because, (1) the plaintiff was not in his proper place when injured.—*L. & N. R. R. Co. v. Wilson*, 85 Ala. 273; *Ga. Pac. Rwy. Co. v. Blanton*, 84 Ala. 154, Gen. Dig. of U. S. p. 1282. (2) The conductor was not a vice-principal, and could not authorize disobedience of his employer's rules at his pleasure, or for plaintiff's pleasure, comfort or convenience.— *Waller's case*, 48 Ala. 459; *Smith's case*, 59 Ala. 245; *Tyson's case*, 61 Ala. 554; *Smoot's case*, 67 Ala. 13; *R. R. Co. v. Kier*, 21 Pac. Rep.

770; Patterson's Railway Law, pp. 324–327, §§ 305–307. (3) The sides of the cut were built and maintained in view of the fact that brakemen would not be required, by their duties, to be exposed to collisions with rocks in the sides of the cut, and the defendant could not reasonably anticipate such a breach of duty on the part of plaintiff or its conductor. *Wilson's case*, 85 Ala. 272; *Hall's case*, 87 Ala. 708. (4) The conductor had no notice of any defect in the condition of the cut, and his ordering plaintiff to do a merely dangerous service, would not render such order negligent, since danger is one of the obvious risks of railroad service, which the employè assumes.—Wood's Master & Serv., (2nd ed.,) p. 672, § 326.

WHITE & HOWZE, *contra.*—The court did. not err in over-ruling defendant's demurrers to first and second counts of the complaint.—*L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *R. R. Co. v. Thompson*, 62 Ala. 494; *R. R. Co. v. McLendon*, 63 Ala. 266; *Leach v. Bush*, 57 Ala. 145. The court did not err in its rulings upon the charges given and refused.—1 Brick. Dig. p. 778, § 71; *Smith v. Awbrey*, 19 Ala. 63; *R. R. Co. v. Yarborough*, 83 Ala. 238; *R. R. Co. v. Chasteen*, 88 Ala. 593; *Eureka Co. v. Bass*, 81 Ala. 200; *R. R. Co. v. McLendon*, 63 Ala. 266; *R. R. Co. v. Ross*, 112 U. S. 377; *Cleveland v. King*, 3 Ohio St. 201; *Groden v. St. Paul*, 11 Am. & Eng. R. R. Cases, 644; *Lalor v. Chicago*, 52 Ill. 401; 2 Thompson on Neg., p. 1010, § 17.

McCLELLAN, J.—1. The objection taken by the demurrer to the first count of the complaint as amended is, that it does not sufficiently specify the defect in defendant's roadway which caused the injury complained of. The averment in this regard is that " the defendant, by its neglect and want of care, allowed its roadway to be and become greatly out of repair, unsafe and dangerous . . . and by reason thereof the plaintiff, while in said employ [as a brakeman], and in the performance of his duties as such brakeman, was violently struck against a projecting rock," and thereby suffered the injuries on account of which he sues. It would require a good deal of ingenuity to draw from these facts any other conclusion, or reach any other result as to the meaning of these averments, than that the defect in the roadway con-sisted in the projection of a rock approaching so nearly to passing cars as to strike brakemen while in the discharge of their ordinary duties as such. This is that certainty to a com-mon intent required in pleading, and is a sufficiently specific averment of the defect counted on.

[Geo. Pacific Railway Co. v. Davis.]

2. The negligence laid in the second count of the complaint is two-fold. It alleges negligence of the conductor in ordering plaintiff to ascend to the top of the train at the point of the defect, and also the negligence of the defendant itself because of the existence of the defect—the perilous projection of the stone—and, in effect, that the defect arose from defendant's negligence. It is clear that the negligence of the conductor was dependent upon and resulted from the negligence of the company. But for the defect due to a want of care of the defendant, the conductor's act could not have been a negligent one. With the defect, the defendant was liable with or without concurring negligence on the part of the conductor. Without the defect, the conductor could not have been negligent, or had he been, no injury would have resulted. And the allegation of the conductor's negligence concurring with that of the defendant may be entirely disregarded. It may be granted, indeed, that this count fails to charge any negligence on the part of the conductor for which the company would be responsible; yet, charging as it does actionable negligence and resulting injury against the corporation, the latter would, none the less by reason of the abortive averments as to the conductor's want of care, still be liable for the injuries suffered through its own negligence.—*Grand Trunk Rwy. Co. v. Cummings*, 106 U. S. 700; s. c., 11 Am. & Eng. R. R. Cas. 254; *Booth v. Boston & H. Rwy. Co.*, 73 N. J. 38; *Steten v. C. & N. W. Rwy. Co.*, 46 Wis. 497; *Paulmier v. Erie R. R. Co.*, 5 Uroom (N. J.) 157. The first assignment of demurrer to this count is a "speaking" demurrer. It *alleges* that the only negligence counted on is that of the conductor in giving the order. This, in our opinion, as we have said, is not the case; and the remaining grounds of demurrer, which proceed upon this erroneous interpretation of the count, must fall with it. The objection taken to the count because of the generality of its averments of negligence is untenable. Numerous adjudications of this court support the view, that under our system of pleading very general averments, little short indeed of mere conclusions, of a want of care and consequent injury, leaving out the facts which constitute and go to prove negligence, meet all requirements of the law.—*S. & N. R. R. Co. v. Thompson*, 62 Ala. 494, 500; *Leach v. Bush*, 57 Ala. 145; *M. & M. R. R. Co. v. Crenshaw*, 65 Ala. 566; *S. & N. R. R. Co. v. Bees*, 82 Ala. 340; *L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *W. Rwy. Co. v. Sistrunk*, 85 Ala. 352; *W. Rwy. Co. v. Lazarus*, 88 Ala. 453; *E. T., V. & Ga. R. R. Co. v. Watson*, 90 Ala. 41.

3. The stone which collided with the person of the plain-

tiff did not project sufficiently from the wall of the cut to touch passing cars, though approached so nearly to them as to greatly endanger employès who should at the moment of passing that point be in the act of ascending or descending to or from the top of the train by means of ladders going up on the outside of cars or caboose. It is common knowledge, that this is the usual, if not the universal method of reaching the roof of freight trains. It may also be said to be common knowledge that employès use this means of ascent and descent while the train is in motion, and generally while it is on its way. The evidence in this case, on the part of both plaintiff's and defendant's witnesses, tends to show that it was a custom on defendant's freight trains generally, as well as this particular one, for brakemen during the intervals when their services were not needed at the brakes, and especially in inclement weather, such as prevailed on the occasion in question, to pass to and from the caboose over the sides of the cars and along these ladders. The evidence further goes to show that conductors made no objection to this practice, and that it was the custom of the conductor of this train to order a brakeman out of the caboose about the place where plaintiff was ordered out by him on this occasion. In view of the exigencies of the service, involving the use of ladders on the sides of cars by employès, and this while the train is in motion, and in view of the custom of resorting to such use, which the evidence here goes to show, we do not hesitate to affirm that it was the part of ordinary care on the part of the defendant—assuming, as the jury might have found, the truth of this testimony—to construct and maintain its roadway so as not only to admit of the safe passage of its cars, but also free from any projection or obstruction which would endanger the persons of employès in the use of these side ladders while the train is proceeding on its way, and that the defendant's failure in this regard rendered it liable to the plaintiff for any damages resulting to him from such failure, unless his own negligence proximately contributed thereto.—*Kearns v. C. M. & St. P. R. R. Co.*, 52 Am. & Eng. R. R. Cas. 287; *Ill. Cen. R. R. Co. v. Welch*, 22 Ill. 183; *C. & I. R. R. Co. v. Rupell*, 91 Ill. 298; s. c. 33 Am. Rep. 54; *C. & A. R. R. Co. v. Johnson*, 4 N. E. Rep. 381; *Clark v. St. P. & S. C. R. R. Co.*, 28 Minn. 128; *Johnston v. St. P. M. & M. R. R. Co.*, 41 Am. & Eng. R. R. Cas. 293; *St. L. Ft. S. & W. R. R. Co. v. Iviom*, 37 Kan. 701; s. c. 1 Am. St. Rep. 266; *C. & N. W. R. R. Co. v. Sedelt*, 45 Ill. 197; s. c. 92 Am. Dec. 206.

4. But it is insisted that, conceding defendant's negligence in the premises, the plaintiff must be held to a knowledge of

[Geo. Pacific Railway Co. v. Davis.]

the defect from which the injury resulted in such sort that his actual ignorance thereof, and consequent exposure to the dangers incident to it, was negligence on his part which so contributed to the disaster as to deprive him of any right of recovery therefor. We can not subscribe to this doctrine. Trainmen, having no functions to perform in respect of the construction and maintenance of the roadway, have a right to assume its adaptation and sufficiency in all respects to a safe discharge of their duties in another and distinct branch of the general service, and are not held to a knowledge, which has never, in point of fact, been imparted to them, of defects and dangerous conditions in the culverts, bridges, tracks, embankments, roadbed, cuts and tunnels of the railway company, or of the dangerous nature of adjacent structures, erected or permitted by the company. The duty of the company to this class of its employès is to provide a roadway in all respects reasonably safe for the running of its trains and the performance of the functions imposed upon them by the exigencies of the service, and they have a right to assume without inquiry or investigation that this duty has been discharged. The *onus* of inquiry or investigation is not upon them. If, as matter of fact, they know of unsafe conditions in any of these particulars, and continue in the service after the lapse of a reasonable time for the defects to be remedied or removed, they assume this additional risk, though originally not incident to their employment; but not otherwise.—*Meyer v. Hudson Iron Co.*, 15 Am. St. Rep., 176 ; *Scanlon v. B. & A. R. R. Co.*, 38 Am. & Eng. R. R. Cas. 48 ; *Ridlock v. U. P. R'w. Co.*, 19 Pac. Rep. 191 ; *Nonantum v. Worsted Co.*, 144 Mass. 276 ; *Hulsehan v. G. B. W. & So. P. R. R. Co.*, 12 Am. & Eng. R. R. Cas. 208 ; *St. L. I. M. & S. R'w. Co. v. Sobber*, 100 Mo. 673 ; *Favan v. Sellers*, 4 Am. St. Rep. (La.) 256 ; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708 ; *Wuotilla v. Duluth Lumber Co.*, 37 Minn. 153 ; s. c. 5 Am. St. Rep. 832.

5. Certain rules of the company were adduced in evidence in its behalf. They require brakemen to "be constantly on the alert, observe carefully the engineman's signals, and never, under any circumstances, sleep at their posts ;" and that they "must not leave their brakes while the train is in motion, nor take any other position on the train than that assigned them by the conductor." These rules were two of five hundred, printed in a book of one hundred and twenty-nine pages, and intended for the regulation of all branches of the business carried on by the defendant. There is no evidence that plaintiff was ever required to acquaint himself with these rules, or did in fact know of them or what they contained. His own

testimony, that he had no notice of them, is no where contro-
verted. These rules can perform no office in the case by way
of determining the rights and duties of the plaintiff, except
possibly in going to show that plaintiff's services were to be
rendered at the brakes on top of the cars when his services
were required while the train was in motion, and this is fully
shown by his own and other uncontroverted testimony; and
they might have been excluded from the jury, except perhaps
for this limited purpose. Having been admitted, they can not
be looked to beyond this, and certainly not for the purpose of
imputing negligence to the plaintiff because of conduct on his
part at variance with that which they prescribe.—*Atchison
R. R. Co. v. Plunkett*, 2 Am. & Eng. R. R. Cas. 127; *Carroll
v. E. T., V. & Ga. R. R. Co.*, 41 Am. & Eng. R. R. Cas. 307;
*B. & W. R'w. Co. v. Clem*, 80 Ga. 534, 540–1.

6. Leaving out of view so much of these rules as requires
that brakemen shall remain at the brakes constantly while the
train is in motion, we have, on one aspect of the evidence, the
following case: The duties undertaken by the plaintiff, in
respect of a moving train, were to be performed, as occasion
might require, on the top of the train. There were intervals,
as we have seen, of greater or less duration, depending upon
the recurrence of grades, the distances between stations at
which stops were to be made, &c., during which, ordinarily,
he had no duties to perform at the brakes. It was a custom, as
we have before shown, obtaining upon defendant's freight
trains generally and on this one, for brakemen to pass such
intervals in the caboose, especially in such weather as prevailed
at the time of this occurrence, and to go thence to their posts
of duty as ordered by the conductor, or as occasion required.
This usage of the service was known to the conductor in this
instance, and was sanctioned and acted on by him in so far as
the absence of all objection on his part to the presence of
brakemen in the caboose, and all effort on his part to enforce
a contrary rule if such existed and was known to him, and in
so far as his dealing with the brakemen in apparent recogni-
tion of their right to be there, amounted to sanction and action
upon the custom. The plaintiff had been only for a short
time in the service, and had never been advised that this usage
was violative of any rule of the company or any duty he owed
it in the premises. On the occasion in question he had been,
in accordance with the usage, for some time in the caboose
with, and without objection on the part of the conductor; and
was injured while going thence to his post of duty in obedi-
ence to an order of the conductor, which it was his duty to
obey. This order was given, the conductor says, in accordance

with a rule of his "to order a man out" at that point to tighten
the brakes with reference to a down grade they were approach-
ing, to the end, it seems, that the train might be kept well in
hand with a view of stopping it at a station two miles beyond,
where this train generally, but not always, had occasion to
stop. On these facts, the custom participated in and acted
upon by the conductor, the ignorance on the part of the plain-
tiff of a rule to the contrary, injury received while obeying an
order which it was plaintiff's duty to obey, and the necessity
for which can not be ascribed to any misconduct of his, the
authorities are full to the proposition, that no negligence can be
imputed to the plaintiff, even though a rule to the contrary of
this usage did exist and was known to the conductor; and some
of them go the length of holding, that negligence could not
be predicated even of plaintiff's knowledge of the rule, when
considered in connection with the custom of its non-enforce-
ment, such as is disclosed here. Be that as it may, we are
clear in the conclusion that the fact of plaintiff's being in the
caboose, and the consequent necessity of his exposure to the
peril from which the injury resulted in reaching his post of
duty, do not import negligence on his part, and would not
avail to defeat recovery by him, if the jury found the facts
to be in accordance with the tendencies of the evidence we
have been considering.—Authorities *supra; Fay v. Minneap-
olis, etc., R. R. Co.,* 11 Amer. & Eng. R. R. Cases, 193; *Ste-
phens v. H. & S. J. R. R. Co.,* 98 Mo. 62; s. c., 14 Amer. St.
St. Rep. 610; *Union Pac. Rwy. Co. v. Springsteen,* 41 Kan.
724; *Durbin v. Oregon R. R. Co.,* 11 Amer. St. Rep. 786,
(note); *K. C. R. R. Co. v. Keir,* 44 Kan. 661; s. c., 13 Amer.
St. Rep. 312; *Sprong v. B. & A. R. R Co.,* 58 N. Y. 56; *R.
& D. R. R. Co. v. Chasteen,* 88 Ala. 591.

7. There is some evidence in the record going to show that,
had the plaintiff obeyed the order upon the instant of its de-
livery, he might have reached the roof before the car came op-
posite the projecting rock, and thus have escaped the injury.
The delay in executing the order, however, seems from the
evidence most favorable to the defendant to have been only
for a moment or two, and for the purpose of putting on his
overcoat and gloves—precautions rendered necessary by the
inclemency of the weather. We do not think so brief a delay,
for so reasonable a purpose, can be contorted into a want of
diligence on the part of the plaintiff amounting to contributory
negligence.

What we have said will suffice to determine against the ap-
pellant all of the assignments of error, and all the exceptions
underlying assignments, which proceed severally on the as-

sumptions, (1) that the projection of the stone toward the roadway did not imply negligence on the part of the defendant unless it extended sufficiently to endanger passing cars; (2) that it was incumbent upon the plaintiff to know of the defect which caused the injury, and ignorance on his part was negligence which would defeat his right of action; (3) that plaintiff was guilty of contributory negligence under all aspects of the evidence in being on the side of the car when he was stricken by the stone, in that it was his duty to have been at that time on top of the train; and (4) that plaintiff was guilty of contributory negligence in failing to obey the order of the conductor upon the instant of its delivery. Our conclusions in these respects dispose of the exceptions reserved to the giving of charges 1, 2, 3, 4, 5, 6, 8, 9, 10 and 11, at the instance of the plaintiff, and to the action of the court in refusing to give charges 1, 2, 3, 5, 6, 7, 8, 16, 19, 22, 24 and 28, requested by the defendant.

8. The 10th instruction of plaintiff's series, as perhaps one or two others, is faulty, if dissociated from the evidence, in that it would acquit a brakeman of negligence in violating a known rule of the company made for his guidance and by the supreme authority in the premises, merely because of the conductor's assenting to such violation. We do not understand this to be the law, though there are cases which go far in that direction. But this infirmity is relieved by referring the charge to the evidence which negatives plaintiff's knowledge of the existence of such rule.

9. Charges 25 and 28 requested by defendant were well refused, upon the further ground that they misplace the burden of proof as to contributory negligence. The *onus* in this regard is in all cases on the defendant, though plaintiff's evidence sometimes relieves from the necessity of discharging it. *C. & W. Rwy. Co. v. Bradford*, 86 Ala. 574; *Street Rwy. Co. v. Calderwood*, 89 Ala. 247.

10. There was no evidence in the case that the conductor knew of the defect in the roadway which caused the injury counted on. The negligence charged against him in respect to ordering the plaintiff out at that point must result, if at all, from the imputation of such knowledge to him as matter of law, from the relations he sustained to the defendant, on the one hand, and the plaintiff, on the other. The trial court, in its general charge, and in its refusals of several charges requested for the defendant (Nos. 4, 9 and 23), proceeded on the theory that a conductor, while in control of a train out on the road, is in some sort in the shoes of the company, and a vice-principal to whom the law will impute a knowledge of all facts as

to the roadway, etc., which are known or ought to be known to the company itself; and there are not a few well considered adjudications which so hold.—*Little Miami R. R. Co, v. Stevens*, 20 Ohio, 415; *Railway Co. v. Keary*, 3 Ohio St. 201; *L. & N. R. R. Co. v. Collins*, 2 Duvall (Ky.), 114; *Ayers v. R. & D. R. R. Co.*, 84 Va. 679; *C. & M. R. R. Co. v. Ross*, 112 U. S. 377. But our own cases, and perhaps the weight of authority generally, support the contrary view, at least to the extent of holding that, without regard to grade or rank, and whether the element of personal control enters into the consideration or not, all who are servants of a common master, engaged in the same general business, subject to the same general control, and are paid out of a common fund, are fellow servants in respect to all acts done in the common service, unless the duty performed by them be such as properly belongs to the master, as such, and in which case they take the place of the master, and he is chargeable with their acts as if performed by him personally with all the knowledge in the premises which the law imputes to him.—McKinney on Fellow Servants, p. 53, § 23; *A. & F. R. R. Co. v. Waller*, 48 Ala. 459; *M. & M. R. R. Co. v. Smith*, 59 Ala. 245; *Tyson v. S. & N. R. R. Co.*, 61 Ala. 554; *Smoot v. M. & M. R. R. Co.*, 67 Ala. 13. It may be, that some of our cases, that of *M. & M. R. R. Co. v. Smith, supra*, for instance, have gone to the extremest verge of soundness in applying the doctrine of fellow servants to the exemption of the employer from liability; but we apprehend it would be a more radical departure, in the opposite direction, from what may be considered the established rule in our jurisprudence, to hold that a conductor in the control of a train is exercising the functions of the master in giving ordinary directions and orders in the management and running of the train so as to be chargeable with a knowledge of every fact in relation thereto which is known, or of which the law imputes a knowledge, to the master.

11.  It seems to us, however, that a decision of that question is not necessary to a correct determination of this appeal. The negligence imputed to the conductor in the second count of the complaint, and which the rulings of the court in certain instructions given and refused allow the jury to impute to him, on the theory of his being a vice-principal, is, as we have seen, in its nature secondary and suppletory to that of the defendant itself. If there was a dangerous projection from the wall of the cut, that was the negligence of the defendant, for the injury resulting from which the defendant would be liable under either count of the complaint, as well without, as with concurring negligence of the conductor. If there was no such

defect, there could be no negligence either on the part of the defendant directly, or on the part of the conductor, and indirectly through him, on the part of the defendant. If plaintiff knew of the defect, his contributory negligence, in attempting to ascend the ladder at that point, is not relieved by the fact that the attempt was made in obedience to the conductor's order. And if the plaintiff was negligent in being in the caboose, his presence there involving a necessity to ascend at that place to the top of the train, that negligence was just the same, in itself and in its results, whether or not the conductor was lacking in due care in ordering him out. Or, in other words, the rights and liabilities of the parties—the cause of action and the defense to it—being precisely the same whether the negligence is imputed to the conductor or not, the rulings of the court in respect to his alleged negligence, whether sound or not, abstractly considered, could have exerted no influence in the premises; and if error was committed therein, it was without injury, and will not avail to operate a reversal of the judgment.

We have discussed all the questions treated of in the argument of appellant's counsel. Several other matters are assigned as error. They have been carefully considered, but we deem it unnecessary to enlarge upon them here. They involve no error.

The judgment of the City Court is affirmed.