# Bridges, Admr., v. Tennessee Coal, Iron & Railroad Company.

*Action for Damages against Employer, by Administrator of Deceased Employee.*

1. *Employers' Liability Act; complaint alleging more than one cause of action.*—Subdivision 3 of the Employers' Liability Act (Code, § 2590) was not intended to provide a cause of action in a case which properly is embraced within subdivision 1 of that act. If the grounds provided for in two or more of the subdivisions of that act concur to produce the injury, it may be so averred in one count; but, to authorize a recovery under such a count, the plaintiff must establish both allegations of negligence.

2. *Special replications to pleas; insufficiency of.*—Special replications to pleas in an action at law, which merely traverse the facts of the pleas, or fail to avoid them, or depart from the case made by the complaint, are subject to demurrers pointing out these defects.

3. *Volenti non fit injuria; application of rule, under Employers' Liability Act.*—The doctrine of *volenti non fit injuria* applies in the cases provided for by the Employers' Liability Act (Code, § 2590) ; and an employee, with knowledge of a defect in the ways, works or machinery, who continues in the service of his employer after the lapse of a reasonable time for its remedy, assumes the risk incident

[Bridges, Admr. v. Tennessee Coal, Iron & Railroad Co.]

to such defect, and can not recover for injuries which he receives in consequence thereof.

4. *General affirmative charge; when properly given.*—Where the facts in a case at law admit of different conclusions, the question involved should be left to the jury; but where the facts leave no inference open but one, the law declares the conclusion, and in such case it is proper for the court to give the general affirmative charge.

APPEAL from the City Court of Birmingham.

Tried before the Hon. WM. W. WILKERSON.

The opinion states the nature of the case. To the ninth, tenth, and eleventh special pleas, the substance of which is stated in the opinion, the plaintiff filed the following replications:

"(1) After the complaints by plaintiff's intestate had been made to defendant, through its agent, as to the alleged defects in the engine, the defendant caused said engine to be sent to its repair shops, to-wit, the Linn Iron Works, and there caused it to be worked on and repaired, and to remain in said shop for the space of, to-wit, four days, and then caused said engine to be again placed in use on its road. And after such engine had been in use for, to-wit, two days, defendant, by its agent having charge of such matters, instructed plaintiff's intestate to take said engine on a trip over a portion of its road, and then and there stated to plaintiff's intestate that there was some work absolutely necessary to be done by said engine before it could go again to the shops, and there was other work being done in the shops before that engine could be repaired fully, and that the engine must make two more trips, and instructed plaintiff's intestate to continue work on said engine. Plaintiff's intestate was a locomotive engineer by profession, and not a boiler maker or worker on locomotives, and had no experience in work on them, and did not know the mode of repairing them. (2) For further replication to said pleas, plaintiff says that, not confessing, but denying, the allegations of the same, yet if it be true that his intestate remained in the service of defendant after the defects had become known to him, his said intestate so remained because defendant caused said locomotive to be repaired a short space of time, to-wit, three days, before the explosion set forth in the complaint, and his intestate, being inexperienced and ignorant about the inside work on boilers, or their internal de-

fects, or the mode of repairing them, relied on the fact that defendant had caused said engine to be repaired, and furnished the said engine to him to do its work. (3) Further replying, plaintiff says that defendant caused said engine to be repaired about four days before its explosion, and, after it came from the repair shops, furnished said engine to him as a suitable machine to do its work. Plaintiff further says that the defects which caused the injury were not visible, external defects, but were hidden, concealed defects, and only to be detected by experts, and their existence was not then known to plaintiff's intestate ; that there were visible defects in said engine, such as a leak in the boiler, which did not cause the explosion. Defendant had in its employ, at its shops, expert machinists, and after the engine had been sent thither for repair, plaintiff's intestate assumed that the engine was reasonably safe for its work. (4) For further replication to said pleas, plaintiff says that, after the defendant acquired the knowledge of the existence of the defects in said locomotive, it had the said locomotive repaired at the shops, and assured plaintiff's intestate that the same was a suitable and fit locomotive, and placed him in charge thereof. (5) For further replication, plaintiff says that, after the defendant acquired knowledge of the defects in said locomotive, it repaired those defects which were visible, on the outside, to persons not skilled in the manufacture and repair of locomotives, and placed plaintiff's intestate in charge thereof, and informed him that an emergency had arisen in its business which required the use of said engine, and ordered him to use the same, and, in conforming to said order, the injury complained of resulted. (6) For further replication, plaintiff says that, after defendant acquired knowledge of said defects, it caused repairs to be made on said engine, and promised plaintiff's intestate that the same should be repaired more fully after it made two more trips, then necessary to be made, and the injury occurred on the first of said trips or runs. (7) For further reply to said pleas, plaintiff says that the defendant was guilty of wanton and willful wrong in furnishing to his intestate a locomotive which appeared to be reasonably safe to one not skilled in the building and repair of locomotives, but the dangerous defects in which were known to defendant. (8) For

[Bridges, Admr. v. Tennessee Coal, Iron & Railroad Co.]

further reply, plaintiff says that the defendant was so negligent and reckless in furnishing to his intestate the said engine, which, to one unskilled, as his intestate was in the building and repair of locomotives, appeared to be sound, yet was, in fact, by reason of internal defects, known to defendant, in an unsafe and dangerous condition, and exploded by reason of such unsafe condition, that its conduct was the equivalent of wanton and willful wrong. (9) The plaintiff, for replication to the ninth, tenth and eleventh pleas of the defendant, says that, not confessing, but denying, the matters set up, yet plaintiff says that, even if it be true that plaintiff's intestate remained in the service and employment of the defendant for the period of time set forth in said pleas, he did so because the defendant sent the said defective locomotive to the repair shops, to-wit, to the Linn Iron Works, for repairs, and the said locomotive was carried to the said shops for repairs, and remained in the said shops for, to-wit, four days, and that plaintiff's intestate, not being a skilled machinist, and not being a boiler repairer, when the said locomotive was taken from the said shops, and again placed in service, and plaintiff's intestate being ordered by his superior, to whose orders he had been accustomed to conform, to take charge of and run the said locomotive, he obeyed said orders, under the belief that, although the repairs might not be as thorough as he, in his inefficiency as an expert mechanic, would judge to be perfect, yet, with no knowledge that the locomotive was so defective as to endanger life or limb ; and, besides, plaintiff's intestate was, at a very early hour in the morning of the accident, in haste, ordered by his said superior to take charge of and run the said engine, and plaintiff's intestate, as a prompt and faithful servant, being so ordered by his said superior to take out the said locomotive, did not have time to inspect and consider as to whether or not the locomotive was so defective, after its recent return from the repair shops, as to be dangerous to life or limb, and plaintiff's intestate was in haste, and with little or no time to scrutinize and deliberate, ordered by his said superior to take the said locomotive, and make with it, to-wit, two trips before it could be further repaired, plaintiff's intestate, knowing that the said locomotive had been to the repair shops, as aforesaid, and had re-

mained there, to-wit, four days, and not having been out of the said shops but, to-wit, three days, and being hastily ordered to take charge of and run the said locomotive, and use it as aforesaid, is not chargeable with contributory negligence, as is alleged in the said ninth, tenth, and eleven pleas."

. The defendant demurred to plaintiff's replications numbered 1, 2, 4, 5, 6, 8, and 9 to defendant's pleas numbered 9, 10, and 11, on the following, among other grounds, respectively: "(1) Said replication is bad in that it neither confesses the pleas and seeks to avoid them, nor does it traverse the averments of the pleas; (2) because said replication is bad in this, that, without admitting the averments of defendant's pleas, said replication seeks to avoid said averments." The demurrer to said seventh replication was on the following grounds: "(1) Because it appears from the averments of said replication, taken together with the pleas, that, if the defendant was guilty of wanton and willful wrong, the plaintiff's intestate was also guilty of recklessness, willfulness or wantonness, and for that reason the replication is no answer to the plea. (2) Because, no matter what was the character of defendant's negligence, in furnishing a locomotive with dangerous defects, nevertheless, the plaintiff's intestate had assumed the risk growing out of the existence of these defects, as shown by the allegations of the plea. (3) Because no facts are averred in said replication which show willful, wanton or reckless negligence." The court sustained the demurrers to the first, second, fourth, fifth, sixth, seventh, eighth, and ninth replications. The other facts of the case are sufficiently stated in the opinion. Upon the introduction of all the evidence, the court, at the request of the defendant, gave the following written charge to the jury: "If the jury believe the evidence, they must find for the defendant." The plaintiff excepted to the giving of this charge. There were verdict and judgment for the defendant, and the plaintiff appeals.

MILES & HIBBARD and W. R. HOUGHTON, for appellant.

WALKER PERCY, contra.

COLEMAN, J,—The action was instituted under the

Employer's Liability Act (Section 2590 of the Code of 1886), by appellant, to recover damages resulting from the death of plaintiff's intestate, who at the time of the injury was an engineer in the employment of defendant. The complaint contains four counts, the first three of which are framed under subdivision one of Section 2590, and the negligence averred in these counts consisted in a defective locomotive and boiler. The fourth count was framed in part under the third subdivision, and in part under subdivision one, *supra*. This count avers that deceased was injured while conforming to the orders of one McKenzie, whose orders he was bound to obey. The count then proceeds to allege that the danger of conforming to the order, which was simply to use the engine, consisted in the defective boiler. We are of opinion that subdivision three, *supra*, was not intended to provide a cause of action in a case which properly is embraced within subdivision one, *supra*. These are independent the one of the other, and each has a different field of operation. It is true that if the grounds provided for in two or more of the subdivisions concur to produce the injury, it may be so averred in the same count; but, to authorize a recovery under such a count, the plaintiff must establish both allegations of negligence, and if, under the pleadings and evidence, it is shown that plaintiff has failed to sustain the action upon either ground, upon a count thus framed, he must fail in the suit, as much so as if he had averred but the one which was not sustained. The record does not sustain the contention that the court sustained a demurrer to the fourth count after it was amended. The defendant pleaded the general issue, and several special pleas. The case was tried principally upon the 9th, 10th and 11th special pleas, which set up the contributory negligence of the deceased. The negligence of the deceased, as pleaded, consisted in his remaining in the employment of the defendant, and his continued use of the defective boiler and locomotive, an unreasonable length of time after the deceased was aware of their defective and dangerous condition. and after deceased knew that defendant knew of their defective and dangerous condition, and the refusal of the defendant to repair the same. The plaintiff filed several replications to these pleas, to all of which the court sustained a demurrer, except the third repli-

cation. We are of opinion that the court did not err in its ruling upon the demurrer to the replications. An examination will show that these replications, which should confess the facts of the pleas, and avoid them by further averments of facts, not inconsistent with or a departure from the case made by the complaint, either merely traverse the facts of the plea, or depart from the case made by the complaint, or failed to avoid them. So far as these replications traverse the facts averred in the plea, the plaintiff got the full benefit of them upon issue joined upon the pleas. After a full discussion and review of the authorities we declared in the case of *Birmingham Railway & Electric Co. v. Allen*, 99 Ala. 359, the doctrine "*volenti non fit injuria*" applied under the Employer's Liability Act, and that where an employe, knowing and appreciating the danger and risk, elects voluntarily to encounter them, and is injured, he can not maintain an action to recover damages for the injury sustained. But if the employer undertakes, expressly or impliedly, to remedy the defect and remove the danger within a reasonable time, such an undertaking or assurance is an assumption by the employer of the risk incident to the duties of the employment, during such reasonable time, and if the employe is injured in the meantime, by reason of the risk and danger thus assumed by the employer, the latter will be held responsible for the injury. If the employe remains in the service, and continues to encounter voluntarily and with a knowledge and appreciation of the risk, without such assurance, or after the time within which the defect should have been remedied and the danger removed, according to such undertaking or assurance, the risk becomes his own.—*Allen Case, supra*; *Eureka Co. v. Bass*, 81 Ala. 200; *Georgia Pacific R. R. Co. v. Davis*, 92 Ala. 300. The pleas brought the defense fairly within the principles declared in these cases.

The evidence in the case is full and uncontradicted that, for months prior to his injury, the plaintiff's intestate knew the dangerous condition of the boiler, that he knew the great peril to which he was exposed whenever he used it. He had said as much on many occasions himself, and had been told of the danger by experts. That, notwithstanding the information imparted to him, and his complaints as to the condition

[Vice v. Littlejohn.]

and the danger of using the boiler, he continued to use it. These facts were known to him on the morning of the fatal explosion, and he stated that he would worry with the boiler until the end of the month, which was only four days later, at which time it was his intention to quit the service until the boiler had been thoroughly repaired. The deceased seems to have been a competent and faithful employe, and his great desire to serve the defendant no doubt was the controlling inducement to remain in its service, and undertake and assume the great peril which finally resulted in his death. These considerations can not affect the application of just principles of law. A person who knows the peril of an undertaking, and voluntarily assumes it, cannot be wholly irresponible for the result.

The appellant contends that the question of contributory negligence should have been left to the jury. This is the correct practice where the facts admit of different conclusions, but where the facts leave no inference open but one, the law declares the conclusion. Under the issue joined and the evidence, the defendant was entitled to the general charge.

There is no error in the record, and the judgment must be affirmed.

Affirmed.