## George T. Mellor *vs.* Merchants' Manufacturing Company.

Bristol.   October 23, 1889. — January 1, 1890.

Present: Field, Devens, W. Allen, C. Allen, Holmes, & Knowlton, JJ.

*Personal Injuries — Master and Servant — Employee's Voluntary Assumption of Risk — Due Care — Employers' Liability Act.*

An employee in a mill undertook of his own free will to make repairs, outside of his regular duty, on a defective pulley and belt, upon the suggestion of a fellow workman who had no authority over him, and with the mere consent of his own immediate superior.   He built a staging, and, just before the time for stopping the machinery for the day, was standing with his arm upon the staging, facing the belt and about twelve inches from it, looking up at it, and waiting for it to stop, when the belt came off and caught his arm, and he was injured. *Held*, that he voluntarily took the risk of an obvious danger, and could not recover under the St. of 1887, c. 270, § 1, although he was in the exercise of due care.

Holmes, J.   This is an action for personal injuries caused by a defect in the condition of the machinery in the defendant's mill, where the plaintiff was employed.   The plaintiff has had a verdict, and the question before us is whether it was warranted by the evidence.   The plaintiff's case, as stated by himself, was as follows.   He was nearly twenty-one years old, had followed the business of loom-fixing and weaving since he was twelve, for the last year in the place where he was hurt, and was a loom-fixer at the time of the accident.   He had charge of the pulleys on the looms, but had nothing to do with the shafting or the pulleys on it.   About a week before the accident, he noticed that the belt kept running off a pulley on the shafting, and notified Gillette, the man over him, Thacker, the head of the machine-shop, and O'Gara, one of the men under Thacker.   Gillette said he would see to it.   On the afternoon of the accident the belt slipped off again, and the plaintiff saw that it had not been set right.   He notified Gillette and went to notify Thacker, but found only O'Gara.   O'Gara had no authority over the plaintiff, but told him to take a wrench and move the

pulley a little way. The plaintiff knew that the belt would slip off unless the pulley was changed, started to do it, and told Gillette that he was going to see what he could do with it. Gillette said, " All right." The plaintiff then built a staging, and, at a little before six o'clock P. M., was standing on the floor facing the belt, about twelve inches from it, looking up at it going round, with his left arm on the planks, waiting for the machinery to stop, as it did at six o'clock, when the belt came off again and caught his left hand, and he was injured.

The St. of 1887, c. 270, § 1, expressly requires the plaintiff to have been in the exercise of due care ; but for the purposes of the present case we will assume that it was intended to abolish the defence that the plaintiff took the risk of the known dangers of the business, as an implied term of his contract of service, so far as this defence is peculiar to the relation of master and servant, or is made inequitable by reason of the parties not standing on an equal footing because of the servant's fear of losing a place.

We will assume, further, that we cannot go behind the finding of the jury, that the plaintiff used due care in his attempt to cure a defect that was known to be perilous, although there is some difficulty in seeing what need there was to put himself close to the source of danger when he knew that he could not work upon it until it was at rest, and did not intend to do so, and when he knew also that it would be at rest in a few minutes. But we were inclined to think at the argument that there might be cases where the plaintiff would be held to have taken the risk irrespective of any implied term in his contract of service, even if he could not properly be said to have been negligent, and that this was such a case. We have been confirmed in our opinion by further reflection, and by finding that it had been so decided in England, under St. 43 & 44 Vict. c. 42, before our act was passed; a fact the importance of which is shown in *Ryalls* v. *Mechanics' Mills*, *ante*, 190.

In *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, and 17 Q. B. D. 414, the plaintiff had fallen into a cooling vat which had been left without a railing, and it was found that he had not been guilty of negligence. It appeared, however, that he had perfectly understood the danger, and had incurred it of his

own motion in the course of his work. It was held that he could not recover, because he had taken the risk upon himself, — not by reason of his contract of service, but as one not a servant and invited upon the premises on business of the employer's own would have taken the risk if he voluntarily had put himself into the same situation, knowing and appreciating the danger. The statute does not put servants in a better position than that of the most favored persons who are not servants.

It may be that a case like *Thomas* v. *Quartermaine* comes very near the line ; because, if the servant is acting within the scope of his regular employment, or in obedience to special orders, the fear of losing his place may take away his choice so far that he cannot be said freely to take the risk upon himself. Again, he may not appreciate the danger. *Ferren* v. *Old Colony Railroad*, 143 Mass. 197, 200.   See *Yarmouth* v. *France*, 19 Q. B. D. 647, 657.   So the mere knowledge of the employee and his continuing in the employ may not be necessarily fatal to him.   It is observed by Bowen, L. J., that the maxim is, not *scienti non fit injuria,* but *volenti non fit injuria.*   Compare *Yarmouth* v. *France*, 19 Q. B. D. 647 ; *Fraser* v. *Hood*, 15 Ct. of Sess. Cas. (4th series), 178; *Thrussell* v. *Handyside*, 20 Q. B. D. 359, 365; *Osborne* v. *London & North Western Railway*, 21 Q. B. D. 220; *Stuart* v. *Evans*, 49 L. T. (N. S.) 138; *S. C.* 31 W. R. 706.   See also *Woodley* v. *Metropolitan District Railway*, 2 Ex. D. 384.

But this case does not raise the difficulty which caused the differences of opinion in the foregoing decisions.   By his own story, the plaintiff was intending to make repairs which it was no part of his regular duty to make, and started to do so of his own free will, upon the suggestion of a fellow workman, O'Gara, after asking and obtaining the mere consent of his own immediate superior.   He was only a volunteer, and could stand no better than a stranger would have done who should have offered, and should have been permitted, to make the same repairs.   He perfectly understood what the defect was, and what might happen from it.   If it was not negligent for him to approach it as he did, he took the risk of the danger which he necessarily contemplated as existing when he tried to end it.   Even the Master of the Rolls, who dissented in *Thomas* v. *Quartermaine*, says that

he never entertained a doubt that the Employers' Liability Act does not prevent the proper application of the maxim *volenti non fit injuria.* *Yarmouth* v. *France,* 19 Q. B. D. 647, 654.

The illustrations put by Bowen, L. J., in *Thomas* v. *Quartermaine,* are more in point here than they were in the cause before him. " I employ a builder to mend the broken slates upon my roof, and he tumbles off. Have I been guilty of any negligence or breach of duty towards him? Was I bound to erect a parapet round my roof before I had its slates mended? In the case now before us the negligence relied on by the plaintiff is that a vat in the room in which he worked was left without a railing. Let us suppose that the defendant, impressed with the danger, had actually sent for a builder to put one up, and the builder had fallen in while executing the work. Would the defendant have been guilty of a breach of duty towards the builder? The duty of an occupier of premises which have an element of danger upon them reaches its vanishing point in the case of those who are cognisant of the full extent of the danger, and voluntarily run the risk." 18 Q. B. D. 685, 695. See *Griffiths* v. *London & St. Katharine Docks Co.,* 12 Q. B. D. 493, 495, 496, and 13 Q. B. D. 259; *Mansfield* v. *Baddeley,* 34 L. T. (N. S.) 696, 697.                                    *Exceptions sustained.*

*J. M. Morton,* for the defendant.
*M. Reed,* for the plaintiff.