# Birmingham Railway & Electric Co. v. Allen.

*Action by Employee against a Railroad Co. for Damages on Account of Personal Injuries.*

1. *Pleading; amendment.*—While it is the better practice, when a complaint is amended, to set out in full the complaint, or count thereof as amended the pleader may amend by reference to one count in the complaint, adopting a certain portion of it, by adding certain averments thereto, so as to constitute another and separate count.

2. *Same.*—Where a demurrer has been sustained to a complaint consisting of a single count, it is objectionable to amend the complaint, by the addition of several counts, by reference to and adoption of the original count; a demurrer having been sustained, the complaint was annulled.

3. *Averment of negligence in the complaint.*—In an action by a conductor against a dummy railroad company, for personal injuries, caused by a train running into an open switch, and throwing him from one of the cars, a count of the complaint, which alleges that the injuries were inflicted because "the switch from the main line into the siding on to which said train ran was negligently allowed to be and remain without a lock or other sufficient means of fastening the same," states a good cause of action.

4. *Same* —But the averment in one of the counts of said complaint, that the switch "was negligently allowed to remain open," without other allegations of negligence, is insufficient.

5. *Defect in road-way; not having proper lock or fastening upon switch.* Whether a lock or proper fastening is such a component part of the switch as that the failure to provide it renders a railroad company liable for injuries resulting therefrom, is determined by utility and the usage and custom of well regulated roads.

6. *Same; knowledge of conductor.*—Where, in an action against a railroad company by a conductor for injuries, alleged to have been caused by reason of defects in the condition of the ways, works or machinery of said road, it is shown that the plaintiff had known of the defect complained of for a year prior to the injury, and remained in the employment during that time, he will be held to have assumed the risk, and to be guilty of such contributory negligence as precludes a recovery.

7. *Volenti non fit injuria.*—The doctrine of *volenti non fit injuria* is not changed by the provisions of section 2590 of the Code of 1886; and an employee, with knowledge of a defect in the ways, works or machinery, who continues in the service of his employer after the lapse of a reasonable time for its remedy, assumes the risk incident to such defect, and can not recover for injuries which he receives in consequence thereof.—(*M. & B. R. R. Co. v. Holborn*, 84 Ala 133 ; *H. A. & B. R. R. Co. v. Walters*, 91 Ala. 435 overruled.)

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action brought by the appellee, W. L. Allen, against the appellant, the Birmingham Railway & Electric Company, to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant.

The complaint as originally filed contained but one count, which was in the following language: "The plaintiff claims of the defendant fifteen thousand dollars for that heretofore on to-wit: 1st day of July, 1891, defendant was operating, running, managing and controlling a certain railway known as the East Lake Dummy Line, running from Birmingham in an easterly direction to and by Fritchman's Garden, to East Lake, Alabama. That on said day, plaintiff was in the service or employment of defendant in the capacity of conductor on a certain train, composed of a steam locomotive engine and certain cars, which was then and there being run over and along said railway by defendant; that when said train reached a point on said railway at or near said Fritchman's Garden it ran from the main line on to a switch or siding, and plaintiff by reason thereof was thrown from one of said cars, on which car plaintiff then and there was in the performance of his duty as conductor as aforesaid, and plaintiff's leg was fractured, his hip, shoulder and head and various other parts of his body bruised and lacerated, and plaintiff was otherwise seriously and permanently injured. By reason of his said injuries plaintiff suffered and continues to suffer great mental and physical pain, and loss of time, and plaintiff was rendered less able to work and earn money, and was put to great expense for medicine, medical attention, care and nursing, and plaintiff avers that his said injuries are permanent. Plaintiff avers that defendant negligently caused or allowed the track of said railway, at or near said switch, or said switch to be in a defective condition, and the said accident and plaintiff's said injuries resulted therefrom. Plaintiff further avers that said accident and plaintiff's said injuries were caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, viz., said switch was in a defective condition, said track at or near said switch was in a defective condition, said switch was negligently allowed to be open, said switch was allowed to be and remain without a lock or other proper and sufficient means for fastening the same, said switch was negligently allowed to be and remain without a light or other proper and sufficient means by

which it could be told by the engineer or fireman on said train which way said switch was set. The said defects arose from or had not been discovered or remedied owing to the negligence of defendant, or of some person in the service of defendant and entrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition. Plaintiff further avers that said accident and his said injuries were caused by reason of the negligence of a person in the service or employment of defendant, who had the charge or control of said switch, viz., said person negligently caused or allowed said switch to be then and there open. Plaintiff further avers that said accident and his said injuries were caused by reason of the negligence of a person in the service or employment of defendant, who then and there had the charge or control of said engine, viz., said person negligently caused or allowed said engine pulling said train to run upon or through said switch. All to plaintiff's damage fifteen thousand dollars, hence this suit." The defendant filed several demurrers to this count of the complaint, which were confessed by the plaintiff. Thereupon the plaintiff amended the original complaint as follows : "Comes the plaintiff in the above styled cause, and, by leave of the court first had and obtained, amends his complaint by adding thereto the following additional counts : 2d count. Plaintiff refers to and adopts as a part of this the second count all that part of the first count from the beginning thereof down to and including the words, 'that his said injuries are permanent,' where they first occur in said count ; and plaintiff further avers that said accident and plaintiff's said injuries were caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, viz., the switch from the main line into the siding, onto which said train ran as aforesaid, was in a defective condition. The said defects arose from or had not been discovered or remedied owing to the negligence of defendant, or of some person in the service of defendant and entrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition.

"3d count. Plaintiff refers to and adopts as a part of this third count all of the second count of this complaint except the following sentence thereof, 'The switch from the main line into the siding, onto which said train ran as aforesaid, was in a defective condition.' And plaintiff inserts as a part of this 3d count in lieu of said sentence, and in the corresponding position of said sentence, the following words, viz.,

the switch from the main line into the siding, onto which said train ran as aforesaid, was negligently allowed to be and remain without a lock or other proper and sufficient means of fastening the same, and the same was not kept sufficiently locked or fastened.

"4th count. Plaintiff refers to and adopts as a part of this the fourth count of his complaint all of the second count of this complaint except the following sentence thereof, viz., 'The switch from the main line into the siding, onto which said train ran as aforesaid, was in a defective condition;' and plaintiff inserts as a part of this 4th count in lieu of said sentence, and in the corresponding position of said sentence, the following words, viz., the switch from the main line into the siding, onto which said train ran as aforesaid, was negligently allowed to be open.

"5th count. Plaintiff refers to and adopts as a part of this the 5th count of his complaint all of the second count of this complaint except the following sentence thereof, viz., 'The switch from the main line into the siding, onto which said train ran as aforesaid, was in a defective condition; and plaintiff inserts as a part of this 5th count, in lieu of said sentence and in the corresponding position of said sentence, the following words, viz., the switch from the main line into the siding, onto which said train ran as aforesaid, was negligently allowed to be and remain without a light, target or other proper and sufficient means by which it could be told by the engineer or fireman on said train which way said switch was set.

"6th. Plaintiff refers to and adopts as a part of this the 6th count of his complaint all that part of the first count of the complaint from the beginning thereof down to and including the words, 'That his said injuries are permanent,' and plaintiff further avers that said accident and his said injuries were caused by reason of the negligence of a person in the service or employment of defendant who had the charge or control of said switch and siding, and of the switch leading from the main line into said siding, viz., said person negligently caused or allowed same to be so set that said train ran into said siding as aforesaid."

Defendant demurred to the second count of the complaint, and assigned the following grounds of demurrer: 1. There are no facts averred in said count of said complaint which show that plaintiff was in such relationship to defendant at the time of his injury that defendant owed him the duty to keep its switch in proper condition. 2. There are no facts averred in said count of said complaint which show in what the al-

[Birmingham Railway & Electric Co. v. Allen.]

leged defect consisted. 3. Said count is incomplete, indefinite and uncertain.   Defendant demurred to the third count of the complaint on the same grounds as to the second count, and in addition thereto assigned the following: 4. There is no averment of any facts which show with sufficient certainty that it was the duty of defendant to keep a lock on its switch and to keep its switch locked.   Defendant demurred to the fourth count of the complaint upon the same grounds as to the second count thereof, and added thereto the following: 4. There is no averment of any facts which show that an open switch was a defect in the ways, works, machinery or plant of defendant. 5. There is no averment of any facts which show that it was the duty of defendant to keep its switch closed. Defendant demurred to the fifth count of the complaint assigning the same causes 'of demurrer as are assigned to the second count, and in addition thereto the following: 4. There are no facts averred which show with sufficient certainty that it was the duty of defendant to keep its switch lighted, or to have a target or other appliance by which the engineer and fireman could see how the switch was turned. Defendant demurred to the sixth count of the complaint and assigned the same causes of demurrer as are assigned to the second count, adding thereto the following: 4. It is not averred in said count of said complaint with sufficient certainty who was the person whom it is alleged was in the service and employment of defendant, and had charge of said switch, and negligently caused or allowed said switch to be open.   These demurrers to each of the counts were all severally overruled by the court; and issue was thereupon joined on the pleas of the general issue and contributory negligence.

The facts as disclosed by the bill of exceptions were, that the plaintiff was a conductor on a dummy train of defendant, which was on its way from East Lake to Birmingham about 7:15 o'clock on the evening of the 1st of July, 1891; that the train, as it was passing a side track at Fritchman's Garden, a station on the line between East Lake and Birmingham, ran into an open switch on to the side track. The plaintiff was on the front platform of the front coach, next to the engine, where, according to the testimony of the defendant, he was standing without holding on to any thing, and where he had gone, according to his own statement, to collect the fare of a passenger he thought was on the platform.   As the train ran into the open switch, it was diverted from a straight line, and the lurch occasioned thereby caused him to be thrown off of the platform, and he received

the injuries complained of. The negligence complained of was that there was no lock on the switch, nor was there a target or light thereon. As is stated in the opinion, the undisputed evidence was that the plaintiff had been in the employment of the defendant for twelve months, and during that time there had never been a lock on the switch, or light, or target thereon, and that this was known to the plaintiff. There were several exceptions reserved by the defendant to the rulings of the court upon the testimony, but the opinion of the court renders it unnecessary to notice these rulings in detail. The court, at the request of defendant, gave the general affirmative charge in its behalf as to the fourth and sixth counts of the complaint.

Among the written charges which were requested by the defendant, and to the refusal to give each of which the defendant duly excepted, were the following: (8.) "That if the jury believe from the evidence that it was dangerous to use the switch without a lock, and that the plaintiff had been running over the road for a year with full knowledge that there was no lock on said switch, then I charge you that it would be negligence for him to stand upon the front platform without holding." (9.) "If the jury believe that the plaintiff knew that the defendant did not have a switch lock on the switch through which the train ran for twelve months prior to the accident, and did not communicate such fact to any one in the service of the defendant superior to him, they must find for defendant." (17.) "That if the jury believe from the evidence that it was dangerous to operate defendant's railroad without a lock on the switch mentioned in the complaint, and that plaintiff had been running on said road as conductor or otherwise for nearly one year or more before the alleged injury, with full knowledge that said switch had no lock on the same, and if you further believe that plaintiff went out and stood upon the platform of one of defendant's cars without holding to something, if he could have held to something, then I charge you that plaintiff was guilty of negligence, and if you believe if he had held on to something which he could have held on to, while on the platform, he would not have fallen off and been injured, then I charge you that your verdict must be for defendant."

It is not deemed necessary to set out in this statement the many other charges asked by defendant, to the refusal to give each of which a separate exception was reserved.

[Birmingham Railway & Electric Co. v. Allen.]

There was judgment for plaintiff, and, on this appeal by defendant, the rulings of the trial court on the pleadings, evidence and upon the charges are assigned as error.

HEWITT, WALKER & PORTER, for appellant.—The court should have sustained the defendant's demurrers to each of the counts of the complaint as amended.—*Columbus & Western R. R. Co. v. Bradford*, 86 Ala. 574; *Ensley Railway Co. v. Chewning*, 93 Ala. 24; *Leach v. Bush*, 57 Ala. 154; *Phœnix Ins. Co. v. Moog*, 78 Ala. 301; *Batton v. S. & N. Ala. R. R. Co.*, 77 Ala. 591; *L. & N. R. R. Co. v. Hall*, 91 Ala. 121. The burden was on the plaintiff to show that the absence of the switch lock was the proximate cause of his injury.—*Joy v. Winnisimmet Co.*, 114 Mass. 63; *Deyo v. N. Y. C. R. R. Co.*, 34 N. Y. 7; 16 Amer. & Eng. Encyc. of Law, p. 445. The continuance of the plaintiff in the service of the defendant, after the knowledge of the defect in the road-way, rendered him guilty of contributory negligence, and prevents a recovery.— *Ga. Pac. R. R. Co. v. Davis*, 92 Ala. 300.

BOWMAN & HARSH, *contra*, on application for re-hearing, cited, *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133; *H. A. & B. R. R. Co. v. Walters*, 91 Ala. 435; *Scanlon v. Boston & A. R. Co.*, 18 N. E. Rep. 209; *White v. Nonantum Worsted Co.*, 144 Mass. 276; *Soeder v. St. Louis I. M. & S. Ry. Co.*, 13 S. W. Rep. 714; 100 Mo. 673; *Faren v. Sellers*, (La.) 3 So. Rep. 363; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708; *Woutilla v. Duluth Lumber Co.*, 37 Minn. 153; 33 N. W. Rep. 551.

COLEMAN, J.—The action is to recover damages for personal injuries. It is much the better practice, when a complaint is amended, to set out in full the complaint or count as amended, unless the amendment is of such a character that it may be readily made by a mere interlineation. We have, however, never construed the statute allowing amendments so strictly as to hold that the pleader may not, by reference to one count in the complaint, adopt a certain specified portion of another, and add to it averments, so as to constitute another and separate count.

The complaint is subject to another objection. As originally found, there was but a single count. The court sustained a demurrer to the complaint. The effect of the judgment sustaining the demurrer was to annul and hold for naught the complaint in its then condition. Until amended, or a new complaint filed, there was no 1st count before the court. The complaint was amended by adding thereto a

[Birmingham Railway & Electric Co. v. Allen.]

second, third, fourth, fifth and sixth count. Each of these amendatory counts refers to and adopts as a part of these respective counts a specified portion of the 1st or preceding counts.

We will consider the sufficiency of the counts upon which the trial was had. The third count adopted a portion of the first and the whole of the second, with the exception of a single sentence. Written out consecutively in full it reads as follows:

"The plaintiff claims of the defendant fifteen thousand dollars, for that heretofore, on, towit, 1st day of July, 1891, defendant was operating, running, managing and controlling a certain railway known as the East Lake Dummy Line, running from Birmingham in an easterly direction to and by Fritchman's Garden, to East Lake, Alabama. That on said day plaintiff was in the service or employment of defendant in the capacity of conductor on a certain train, composed of a steam locomotive engine and certain cars, which were then and there being run over and along said railway by defendant, that when said train reached a point on said railway at or near said Fritchman's Garden, it ran from the main line into a switch or siding, and plaintiff by reason thereof was thrown from one of said cars, on which car plaintiff then and there was in the performance of his duty as conductor as aforesaid, and plaintiff's leg was fractured, his hip, shoulder and head and various other parts bruised and lacerated, and plaintiff was otherwise seriously and permanently injured.. By reason of his said injuries plaintiff suffered and continues to suffer great mental and physical pain and loss of time, and plaintiff was rendered less able to work and to earn money, and was put to great expense for medicine, medical attention, care and nursing, and plaintiff avers that his said injuries are permanent; and plaintiff further avers that said accident and plaintiff's said injuries were caused by reason of defects in the condition of the ways, works, machinery or plant connected with or used in said business of defendant, viz., the switch from the main line into the siding onto which said train ran as aforesaid was negligently allowed to be and remain without a lock or other proper and sufficient means of fastening the same, and the same was not kept sufficiently locked or fastened. The said defects arose from, and had not been discovered or remedied owing to the negligence of defendant, or of some person in the service of defendant and entrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition."

[Birmingham Railway & Electric Co. v. Allen.]

The words, "and the same was not kept sufficiently locked or fastened," may be stricken out as mere surplusage and enough remains to constitute a good count. We do not think these words, in the connection used, indicate that the plaintiff sought a recovery for negligence in not having the switch locked or fastened, but rather that it was not locked or fastened in consequence of the allegation that there was neither lock nor fastening to the switch. Whether a lock or proper fastening was such a component part of a switch, as that the failure to provide it rendered the company liable for injuries resulting therefrom, would depend upon the proof.

Upon this question the rule is clearly laid down in *L. & N. R. R. Co. v. Hall*, 91 Ala., on page 121, where, in reference to "whipping straps," the court said: "Is it so manifestly serviceable as to command the consensus of intelligent railroad men so generally, as that it cannot be reasonably ignored or disregarded? Or, is its utility disbelieved and disallowed in the management of many well governed and well regulated railroads? If this question be debatable and skilled railroad men honestly differ in judgment as to the utility of this or any other cautionary appliance, and differ to such extent as that many well regulated railroads abstain from their use, then such abstraction is not legal negligence." In the case of *Hall*, the principle was applied to roads commonly designated railroads. In the present case the road is designated and distinguished as a dummy road, but there can be no difference in the application of the principle

If it be shown that the omission to provide a lock or proper fastening for the switch was culpable negligence, and the negligence arose as averred in the complaint, and the switch was displaced by an intermeddler, such displacement would not be necessarily such an intervention of an independent intervening cause, as to constitute the sole proximate cause of the injury. The evident purpose of the use of locks or fastenings is to make the switch reasonably safe against the interference of, or displacement by trespassers, as well as accidental causes. In such cases ordinarily the neglect of the defendant in failing to provide locks or fastenings, would be regarded at least as jointly contributing to the result.

The fourth count is clearly defective. The averment that the switch "was negligently allowed to be open," does not show a defect in the ways, works, and machinery of the defendant corporation, neither has such an averment any legal or proper connection, with the person whose duty it is to

see that the ways, works and machinery were in proper condition. This count demonstrates the danger and confusion likely to arise in pleading by adopting portions of other counts by a mere reference to them. The safe practice is to draw the counts in full, as one entirety. With the exception of the defect pointed out in another part or this opinion, the other counts are sufficient, and the demurrers properly overruled.

The evidence shows without dispute that plaintiff had been in the employ of the defendant as conductor for a year. He testified himself " that the switch had no light or target on it, and had not since I had been running on the road. There never had been a lock or means of fastening on it since I went on the road, a period of twelve months. I had been running on the road for twelve months."

In the case of *The Columbus & Western R. R. Co. v. Bradford*, 86 Ala. 574, the court used this language : "Contributory negligence, which would defeat an action, might have consisted of a failure on the part of the plaintiff, either to reasonably give notice of the defect in appliances used in his employment, or of the negligence of his superiors, if known to him, which produced the injury ; or of a failure, after having given such notice, to quit the service to which such defect or negligence was incident, after a reasonable time had elapsed for its correction."

In *Georgia Pacific v. Davis*, 92 Ala. 300, the principle is thus clearly stated : "The duty of the company to its employes is to provide a roadway in all respects reasonably safe for the running of its trains, and the performance of the functions imposed upon them by the exigencies of the service, and they have the right to assume without inquiry or investigation that this duty has been discharged. The *onus* of inquiry or investigation is not upon them. If, as matter of fact, they know of unsafe conditions in any of these particulars, and continue in the service after the lapse of a reasonable time for the defects to be remedied or removed, they assume this additional risk, though originally not incident to their employment." Many cases are cited in support of the proposition, and it is manifestly just. If it be conceded that the failure to provide a lock or proper fastening for the switch be a culpable defect, there are no facts in the present record which relieve the plaintiff from being held guilty of contributory negligence under the influence of the foregoing principles.

Reversed and remanded.

(Response to application for re-hearing.)

COLEMAN, J.—The evidence is conclusive and without conflict that the plaintiff voluntarily and without objection continued in the employment of the defendant for a period of twelve months in the almost daily use of, and with a full knowledge of the defect in the ways, works and machinery, alleged to have caused the injury. Under this proof the. court held, that the plaintiff was guilty of contributory negligence. We are now asked to revise this conclusion. Considered in connection with the evidence, as a general proposition of law, the rule asserted is sustained by an overwhelming array of authorities.

In the case of *Rush v. Missouri Pacific R. R. Co.*, 28 Amer. & Eng. Railroad Cases, 484, the court uses this language: "There are cases where a servant knowing the danger may nevertheless recover; but this is not one of the cases; usually where some instrument or appliance has become unsafe from use or otherwise, and the danger from its use is not imminent or obvious, the servant may continue in his master's employment, and use it for a short time, with the expectation that the master will restore the defective instrument or appliance to its former condition. Also when the master has been informed with regard to some defect in some instrument or appliance, and he agrees to remedy the defect, the servant may continue for a reasonable time in the master's employment, so as to give him an opportunity to fulfil his promise. Also when the danger is one to which the servant is not exposed in the ordinary course of his employment, but one which he is at the time required immediately to encounter by a special command by his master or of a superior servant, without time for reflection or choice on the part of the servant, he may obey the command without being guilty of contributory negligence, or without forfeiting his right to recover in case injury results. But not one of these cases is the present case. The plaintiff's intestate could have had no hope in the. present case that the railway's tracks would ever be changed; there was no promise that they would be changed; they were just as they were when originally constructed; and in the ordinary course of his employment the plaintiff's intestate was using them every day, and knew that he must so use them every day." Under the evidence it was held to be a question of law for the court, and that as to plaintiff the defendant was not guilty of culpable negligence.

24

In the case of *O'Rorke v. Union Pacific Railway Co.*, 22 Fed. Rep. 189, Brewer, J., uses the following language : " He [the employe] has the right to wait a reasonable time ; to consider the circumstances of the case, and to give notice to his employers that he is in danger ; time enough to see whether the employer means to have the defect remedied ; time enough to see the general way in which he conducts his business ; and if he finds that his employer intends to use machinery with defects, or to conduct his works in a dangerous way ; finds that is to be his general habit ; finds that, after he has been notified, he still intends to conduct his business in that way, and then goes on and continues in the work, it is fair to assume that he takes the risk."

In *Richards v. Rough, et al.*, 53 Mich. 212, the general proposition is stated as follows : " A servant who continues without objection to use machinery which he has found to be unsafe, assumes the risk, and can not recover for injuries which he may receive in consequence of doing so."

The same rule prevails in Wisconsin. *Dorsey v. The Phillips & Colby Construction Co.*, 42 Wis. 583. Many authorites from other courts might be cited.

This State has declared the law in the same unmistakable terms. In *Eureka Co. v. Bass*, 81 Ala. 201, it is said ; " If the employee, while engaged in the service, acquires knowledge of any defect in the materials, machinery or instrumentalities used, and notice thereby of an increased risk or danger, and afterwards continues in the service without objection or, notice to the employer, he assumes the increased risk himself ; but he may notify the employer of the defect, and continue in the service for a reasonable time relying on the employer's promise to remedy the defect ; yet, if the defect is not remedied within the promised time, his further continuance in the service is at his own risk, and he is guilty of contributory negligence."

In the case of the *L. & N. R. R. Co. v. Hall*, 87 Ala. 708, which arose under the employer's act, the doctrine was distinctly declared, that although the defendant may have been guilty of negligence in the erection and construction of its bridge, if plaintiff knew of the danger, and failed to exercise due care to avoid the danger, and was injured, he would be guilty of contributory negligence. This rule also prevailed in the English courts.

It is contended, however, that the rule as here stated has been changed by statute, and that under the employer's act, section 2590 of the Code and sub-sections, the employe does not assume the responsibilities of injuries caused by defects

in the condition of the ways, works, machinery or plant connected with or used in the business of the master or employer, although known to the employe, and that under the statute he may remain with impunity in the employment of his employer for any length of time, after he becomes aware of the danger, provided the master or employer is aware of such defect; and we are referred to the case of *Mobile & Birmingham R. R. Co. v. Holborn,* 84 Ala. 133, and the case of *Highland Ave. & Belt R. R. Co. v. Walters,* 91 Ala. 435. The case of Holborn, 84 Ala. supports the argument and position of appellee, and if that decision furnishes a proper construction of the employer's act as found in section 2590 of the Code, the opinion rendered in the case under consideration is wrong, for in the *Holborn Case* it is held, that the rule as declared in the *Eureka Co. v. Bass, supra,* which we have cited, is abolished.

The employer's act, as found in section 2590 and subdivisions, is a substantial, if not an exact, copy of the English act of 1880. This court is not finally concluded by the decision of any other State court or the British court, in their construction of a similar statute, but the opinion of learned courts upon similar questions are entitled to great weight, and this is especially true when the statute, from which ours was copied, had been construed prior to its enactment by our legislature. *Armstrong v. Armstrong,* 29 Ala. 538.

In the case or *Griffiths v. London & St. Katherine Docks Co.,* 13 Queen's Bench Division 259, it is said : "If the danger is on which was known to the master and not to the servant, the knowledge of the master and the want of knowledge of the servant make together a cause of action, and as it is necessary that these two things should exist in order to form a *prima facie* case, it is necessary that they should be shown to exist in the statement of the claim."

The case of *Weblin v. Ballard,* reported in 17 Queen's Bench Division, 122, cited in *Holborn Case, supra,* supports the conclusion reached in that case ; and if the case of *Weblin v. Ballard* had remained in force as the proper construction of the statute, we would be bound to hold that the construction given by this court to the statute in the *Holborn Case* was the same as that given by the English courts. In the same volume, 17 Q. B. D., p. 414, the case of *Thomas v. Quartermaine,* which involved the same question, came up for consideration, and the reasoning of the court tended greatly to weaken the decision of *Weblin v. Ballard* as an authority. The case of *Thomas v. Quartermaine* was appealed, and in 18 Q. B. D. 685, the case of *Weblin v. Ballard*

was virtually, though not in express words, overruled. The court held in *Thomas v. Quartermaine*, 18 Q. B. D. 685, that the doctrine of *"volenti non fit injuria"* ("that to which a person assents is not esteemed in law an injury." Broom's Legal Maxims) applied under the employer's act of 1880. Bowen, J. uses this language: "Knowledge is not a conclusive defense itself. But when it is a knowledge under circumstances that leave no inference but one, viz., that the risk has been voluntarily encountered, the defense seems to be complete." Lord Esher, M. R., dissented from the conclusion of the court. The question arose again in the case of *Yarmouth v. France*, 19 Q. B. D. 647, and it was held, Lord Esher, M. R. rendering the opinion, "that upon the facts a jury might find the defendant to be liable, for there was evidence of negligence on the part of the foreman and the circumstances *did not conclusively* show that the risk was voluntarily incurred by the plaintiff." In this case there was also a dissenting opinion by Lopes, J., not as to the law, but upon the facts, the latter Judge holding "there was no evidence for the jury of the defendant's liability, inasmuch as the facts showed that the plaintiff, with full knowledge of the risk to which he was exposed, had elected to continue in the defendant's employment." In this case Lord Esher, M. R. stated that the doctrine *"volenti non fit injuria"* applied under the employer's act of 1880. His conclusion of the opinion is in the following language: "I see nothing in the decision in *Thomas v. Quartermaine* to prevent the plaintiff from recovering in this case, unless the circumstances were such as to warrant a jury in coming to the conclusion that the plaintiff, freely and voluntarily, with full knoweledge of the nature and extent of the risk he ran, implidely agreed to incur it." In the same case Lindley, J., after referring to the case of *Thomas v. Quartermaine* and the sections of the act, held that "the maxim *volenti non fit injuria* is applicable, and that if a workman, knowing and appreciating the danger and risk, elects voluntarily to encounter them, he can no more maintain an action founded upon the statute than he can in cases to which the statute has no application. Those principles in my opinion are perfectly sound."

The act came up for consideration again in the case of *Osborn v. London & North Western Railway Co.* 21 Q. B. D. 220, in which the principles of law declared by Lord Esher, M. R. in the case of *Yarmouth v. France, supra,* by Bowen, L. J. in *Thomas v Quartermaine, supra,* were re-affirmed. We have been unable to find any later adjudication by the English courts construing the English Employer's Liability

Act of 1880, and it would appear as the settled construction by the English courts, that mere "knowledge is not a conclusive defense in itself. But when it is a knowledge under circumstances that leave no inference open but one, viz., that the risk has been voluntarily encountered, the defense is complete." That "plaintiff may recover unless the circumstances were such as to warrant a jury in coming to the conclusion that the plaintiff, freely and voluntarily, with full knowledge of the nature and extent of the risk he ran, impliedly agreed to incur it." It is held by some of the English Judges that these principles qualify to some extent the doctrine of *"volenti non fit injuria,"* and as thus qualified the rule applies under the Employer's Liability Act.

The principle is clearly laid down by Roberts & Wallace in their work on the "Duty and Liability of Employers," pp. 136, 146, 160, 161, 240; and in Buswell's work on the "Law of Personal Injuries" the same conclusion is reached. §§ 207, 208, 209.

Many of the States have statutory provisions in regard to the duties of employers, but so far as we have been able to ascertain, none of the States have a statute similar to ours except the State of Massachusetts. Section 5 of the Employer's Act of the State of Massachusetts—See Acts 1887, Chapter 270, page 899—is as follows: "An employe, or his legal representative, shall not be entitled, under this act, to any right of compensation or remedy against his employer in any case, when such employe knew of the defect or negligence, which caused the injury, and failed, within a reasonable time, to give, or cause to be given, information thereof to the employer, or to some person superior to himself in the service of the employer, who had intrusted to him some general superintendence." This section omits the provision in our statute, and in the English statute, "unless he was aware that the master or employer, or such superior, already knew of such defect or negligence." But this difference in phraseology is immaterial, as the law, without this provision, would not require the employe to do a useless thing, and the Massachusetts courts do not seem to have regarded the difference as material—holding that their act was "copied, with some variation of detail," "the intention was merely to abridge the model and make it more compact," and "therefore, [says the court] it is proper, if not necessary, to begin by considering how the English act had been construed before our statute was enacted." The court then cites the cases to which we have referred. *Ryalls v. Mechanics' Mills,* 150 Mass. 190. The precise question, which

we are considering, did not arise in this case. In the case of *Mellor v. Merchants' Manufacturing Co.*, reported in same volume (150 Mass. 362), the rule declared in *Thomas v. Quartermaine*, 18 Q. B. D. 685, and *Yarmouth v France*, 19 Q. B. D. 654, that the Employers Liability Act did not prevent the proper application of the maxim, *volenti non fit injuria*, was approved. In the subsequent case of *Malcolm v. Fuller*, 152 Mass. 167, a charge was given by the trial court in favor of the defendant, in which the maxim was applied, and though this charge was not open to revision, it is quoted in the opinion, with the statement, "that it was sufficiently favorable to the defendant," citing the case of *Mellor*, *supra*.

It is very clear, that so far as the authorities, outside of this State, go, the rule declared in the case of *The Eureka Co. v. Bass*, 81 Ala. 200, was not abolished by the Employers Liability Act. Possibly, it was somewhat modified, but as we understand the rule, *"volenti non fit injuria,"* as applied in the particular cases cited from the English and Massachusetts courts, there has been in fact no material modification.

A more careful examination of section 2590 of the Code, in connection with the qualifying clause, leads us to the conclusion that our construction of the act, as given in *Holborn Case*, *supra*, was not the proper one. Without the qualifying clause, it is evident there is nothing in the act which, of itself, would abolish the rule of *"volenti non fit injuria"* as declared in 81 Ala., *supra*. The qualifying clause was not intended to enlarge the rights of the employe, or extend the liability of the employer, or take away the defense of contributory negligence. It is obscure and involved, but its terms would indicate an intention to restrict the employer's liability. It says: "But the master or employer is not liable under this section, *if*," &c. It does not provide for an additional liability under certain conditions; but the employer is not liable, notwithstanding he may have been culpably negligent in failing to discover certain defects, and negligence, "if the servant or employe knew of the defect or negligence, and failed, in a reasonable time, to give information," &c. The reasoning of Bowen, J. on this point, in the case of *Thomas v. Quartermaine*, 18 Q. B. D., *supra*, is convincing.

It would seem that the legislature, by a statutory enactment, recognized the application of the maxim of *"volenti non fit injuria,"* as declared by the courts, and out of abundant caution, lest the statute might be construed to give a

[Ex parte Farquhar & Son.]

cause of action absolutely when the defects or negligence specified in the statute was the cause of injury, although the risk of such defect and negligence was voluntarily and knowingly assumed by the employe, added the proviso above referred to. The *Case of Holborn*, 84 Ala. 133, was materially modified by the subsequent case of *Highland Ave. and Belt R. R. v. Walters*, 91 Ala. 435. But we are of opinion that the proper construction of the act leaves in force the rule which prevailed before the adoption of the act, and the rule as declared by this court in the case of *The Eureka Co. v. Bass*, 81 Ala., *supra*, and of *Hall v. L. & N. R. R. Co.*, 87 Ala. 717, 720, continues in force under the Employer's Act. So far as the *Holborn Case* and the *Walters' Case* conflict with these conclusions, they are overruled.

It follows that the application for a rehearing must be denied.