## ARZUAGA et al. v. ORTIZ.

(Circuit Court of Appeals, First Circuit. July 2, 1920.)

No. 1377.

1. **Master and servant** ⊜�longrightarrow250½—**Statute of Porto Rico enlarging rights of employés does not exclude remedy under prior statute.**

Employers' Liability Act Porto Rico March 1, 1902, is not a codification of the law on the subject of liability of masters for acts of employés, but an enlargement of the rights of employés, and the remedies thereby afforded do not exclude any right of action given by Civ. Code Porto Rico, §§ 1803, 1804.

2. **Master and servant** ⊜⟶179—**Liability for negligence of servant under law of Porto Rico stated.**

Under Civ. Code Porto Rico, §§ 1803, 1804, the owner or director of an establishment or enterprise is liable for damage caused by the negligence of his employés acting in the course of their employment, unless he shall prove as an affirmative defense that he took the care of a good father of a family to avoid the damage, not only in selection of his employés, but in superintending their work, which is a personal duty, and cannot be delegated to avoid liability; and this is so, whether the person injured is or is not an employé.

3. **Master and servant** ⊜⟶159—**Fellow servant rule not in force in Porto Rico.**

The fellow servant doctrine does not prevail in Porto Rico.

In Error to the District Court of the United States for the District of Porto Rico; Hamilton, Judge.

Action by Antonio Ortiz against Pedro Arzuaga y Beraza and others, partners under the name of Sobrinos de Ezquiaga. Judgment for plaintiff, and defendants bring error. Affirmed.

Francis H. Dexter, of San Juan, P. R., for plaintiffs in error.

Hugh R. Frances and Frances & De Jesus, all of San Juan, P. R., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a writ of error from a judgment of the federal District Court for Porto Rico in an action of tort brought by Antonio Ortiz against a partnership doing business under the name of Sobrinos de Ezquiaga. The plaintiff is a resident and citizen of Porto Rico, and the defendants are subjects of his majesty the king of Spain. The action was brought November 8, 1916. In the court below there was a trial by jury, and a verdict for the plaintiff in the sum of $3,983.

In the amended complaint it is alleged that on the 6th day of December, 1915, the plaintiff, while acting as an employé of the defendants, under the control and direction of a superior officer employed by them, was severely and permanently injured by being crushed under a coal chute, which fell upon him while working with other employés of the defendants on the San Juan water front; that the coal chute fell upon the plaintiff (1) because of the negligent and careless manner in which the superior officer directed and superintended the

lowering of the chute for the purpose of unloading the coal from a schooner; (2) because the superior officer, in lowering the chute, did not use sufficient apparatus; and (3) that the defendants failed to furnish reasonably safe and suitable instrumentalities, tools, and work place for lowering the chute, or for putting it in a proper position for unloading the coal.

The defendants pleaded (1) a general denial; (2) that at the time of the accident the plaintiff was working under the direction and control of an independent contractor, Lino Fernandez, who furnished all the material and apparatus used in connection with the work; (3) that the plaintiff's injury was the direct result of his own negligence; (4) that the defendants, in the selection of Lino Fernandez, employed all the diligence of a good father of a family; (5) that the plaintiff's injury resulted from the negligence and carelessness of fellow servants; and (6) assumption of risk.

The plaintiff's evidence tended to show that he was injured by the falling of a coal chute on the 6th day of December, 1915, while he was engaged in the defendants' employ unloading coal from a steamer at San Juan; that at the time he was working under the direction of a superintendent, Lino Fernandez; that in the course of the work it became necessary to lower the chute, so that the coal would be delivered into the carts; that the chute at the upper end was attached to the ship by ropes, and at the lower end was supported by two posts nailed to the chute; that, while lowering the chute, one of the posts became detached, throwing the chute out of plumb; that at this time the lower end of the chute was so high above the ground that it could not be reached by the men, and it became necessary, in order to support it in an erect position, to procure a prop to put under it; that the superintendent caused a plank to be procured for this purpose, and told the plaintiff to place it beneath the chute and against the ground, and hold it there, which he did; that at this time other employés of the defendants were assisting, some of whom were holding up the chute with ropes from on board the ship; that it became necessary, in order to lower the chute further, to disengage the remaining post, which was attached to the chute by nails; that after the plaintiff had placed the timber beneath the chute as directed, and while he was holding it there, the superintendent, Fernandez, without warning him, ordered some of the men to pull off the remaining post, and as they responded to the order the chute fell and severely injured the plaintiff.

Errors are assigned to the admission of evidence, to the charge of the court to the jury, to the giving of certain requests of the plaintiff, and to the refusal to give certain requests of the defendants. The validity or invalidity of the rulings and requests depend upon the law of negligence of Porto Rico governing the rights and liabilities of parties standing in the relationship of employer and employé. Counsel have called our attention to the provisions of the Civil Code of Porto Rico, §§ 1803 and 1804, as applicable to the case. These provisions read in part as follows:

"Sec. 1803. A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

"Sec. 1804. The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible. \* \* \* Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employés in the service of the branches in which the latter may be employed or on account of their duties. \* \* \*

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

It appears that the Legislature of Porto Rico on March 1, 1902, passed an act "in relation to the liability of employers for injuries sustained by their employés while in their service," which was in force at the time this accident occurred and unaltered, except for the amendment of 1913 (Laws of Porto Rico 1913, Act No. 69), which did away with the limitation upon the amounts recoverable in the cases specified in sections 2 and 3 of the act. This act was not repealed, so far as the plaintiff's right of action is concerned, by the Porto Rico Workmen's Compensation Act (No. 19) of 1916, for sections 34 and 35 did not in terms repeal it, and all rights that had accrued under it were saved by (3093) section 386, of the Revised Statutes and Codes of Porto Rico, p. 587. Whether the act of 1902 may, in certain respects, be regarded as still in existence and applicable to causes of action arising since July 1, 1916, between employer and employé, in no way concerns the present inquiry. It may not, however, be amiss to say that the act of 1916 (Laws of Porto Rico 1916, Act No. 19) as amended in 1917 (Laws of Porto Rico 1917, Act No. 9) was elective as to both employer and employé (sections 23, 24); that the act of 1918 (Laws of Porto Rico 1918, No. 10) applies only to employers who employ three or more laborers (section 2); that section 21 of the act of 1918 does not apply to injuries by willful act or gross negligence of employer, if waived by workman; and that it is not improbable that the act of 1902 may be applicable in certain cases to accidents occurring since July 1, 1916.

[1] As the act of 1902 was in force at the time this accident occurred, the question is presented whether the remedy there provided for enforcing the rights and liabilities therein defined is the exclusive remedy, or only additional to that provided by sections 1803 and 1804 of the Civil Code; for, if it affords the exclusive remedy, then, inasmuch as section 6 of the act makes the right to bring suit conditional upon written notice of the time, place, and cause of the injury having been given to the employer within 30 days after the injury was received, and it nowhere appears in the record that such notice was given, the action cannot be maintained.

In Diaz v. Fajardo Development Co., 2 P. R. Fed. 152, and Colon v. Ponce & Guayana R. Co., 3 P. R. Fed. 367, Judge Rody, sitting in the federal District Court for the island, held that the remedy provided by the act of 1902 was exclusive, and that an action by an employé against his employer could not be maintained under the provisions of the Code above set forth. But an examination of the act and the sources from which it was taken leads us to believe that the conclusion of Judge Rody was erroneous, and that the act of 1902 was not a

codification of the law governing the rights and liabilities of employé and employer, but was intended rather to enlarge the rights of the employé, or, to express it a little differently, to take away certain defenses theretofore available to the employer.

The act of 1902 is in every material respect a copy of the act of Colorado of 1893 (Laws of Colorado, 1893, p. 129; 3 Mills Annotated Stat. p. 423, § 1511b), which was taken from the Massachusetts Employers' Liability Act of 1887 (St. Mass. 1887, p. 270; Revised Laws of Mass. 1902, c. 106, §§ 71–79; Colorado Milling & Elevator Co. v. Mitchell, 26 Colo. 285, 58 Pac. 28), which in turn was "copied verbatim, with some variation of detail, from the English statute" of 43 & 44 Vict. c. 42 (Ryalls v. Mechanics' Mills, 150 Mass. 190, 191, 22 N. E. 766, 5 L. R. A. 667).

Prior to the enactment of the law in Massachusetts, the English courts, in construing their act, held that it was not a codification of the common law regulating the rights and liabilities of the employé and employer, but an extension of the employé's common-law rights, and that clauses 1, 2, and 3 of section 1 did away with certain defenses of the employer, such as the assumption of risks incident to the business, including those arising from the negligence of fellow employés (Ryalls v. Mechanics' Mills, 150 Mass. 190, 191, 22 N. E. 766, 5 L. R. A. 667), and the Massachusetts and Colorado courts, prior to the re-enactment of the law in Porto Rico, reached the same conclusion, notwithstanding the common law regulating such rights in those states was not in all respects the same and differed somewhat from the common law of England (Ryalls v. Mechanics' Mills, 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667; Colorado Milling & Elevator Co. v. Mitchell, 26 Colo. 285, 58 Pac. 28). See, also, Denver & R. G. R. Co. v. Norgate, 141 Fed. 247, 252, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448; Mellor v. Merchants' Mfg. Co., 150 Mass. 362, 23 N. E. 100, 5 L. R. A. 792; Coughlin v. Boston Towboat Co., 151 Mass. 92, 94, 23 N. E. 721; Clark v. Merchants', etc., Transp. Co., 151 Mass. 352, 24 N. E. 49; May v. Whittier Machine Co., 154 Mass. 29, 27 N. E. 768; Clare, Adm'r, v. N. Y. & N. E. R. R., 172 Mass. 211, 51 N. E. 1083.

Section 1 of the Colorado act of 1893 reads as follows:

"Where, after the passage of this act, personal injury is caused to an employé, who is himself in the exercise of due care and diligence at the time;

"(1) By reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer, which arose from or had not been discovered or remedied owing to the negligence of the employer, or of any person in the service of the employer, and intrusted by him with the duty of seeing that the ways, works and machinery were in proper condition; or

"(2) By reason of the negligence of any person in the service of the employer, intrusted with exercising superintendence whose sole or principal duty is that of superintendence;

"(3) By reason of the negligence of any person in the service of the employer who has the charge or control of any switch, signal, locomotive engine or train upon a railroad.

"The employé, or in case the injury results in death the parties entitled by law to sue and recover for such damages shall have the same right of compensation and remedy against the employer, as if the employé had not been an employé or in the service of the employer or engaged in his or its work."

The Supreme Court of Colorado, in Colorado Milling & Elevator Co. v. Mitchell, 26 Colo. 288, 58 Pac. 29, in construing this act, said:

"That the intent of the act is at most to abolish certain defenses in certain specified cases, and in such cases to impose a compensatory limitation of the right to sue, but in no manner to prejudice the common-law rights of employés, or to interfere with the enforcement of any right that the statute itself does not create."

And in Ryalls v. Mechanics' Mills, 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667, Judge Holmes, after reviewing the English cases construing the English act, said:

"But it would not need the aid of previous exposition to show that the main purpose of the statute, as the title intimates, is to extend the liability of employers in favor of employés, that it does not attempt to codify the whole law upon the subject, and that it leaves open some common-law defenses and some common-law liabilities. In view of these general considerations, we are to construe the statute liberally in favor of employés, and we ought to be slow to conclude that indirectly, and without express words to that effect, it has limited the workman's common-law rights most materially in respect to the conditions and time of bringing an action, and the amount which he can recover"

—and concludes:

"We are of the opinion that in those cases within the words of St. 1887, c. 270, § 1, cl. 1, in which the common law gives an employé a remedy, he still has a right to sue under the same conditions, and to recover damages to the same extent, as if the statute had not been passed."

In view of the apparent purpose of the act to enlarge the scope of the rights of employés and the limited number of instances covering the relation of employer and employé as to which the act applies, we have no hesitation in reaching the conclusion that the remedies afforded by it are not exclusive, and that whatever rights of action are accorded an employé by sections 1803 and 1804 of the Civil Code remain in full force.

[2] It remains to be considered what the rights of an employé are against his employer under the provisions of sections 1803 and 1804 of the Civil Code. These sections are a re-enactment of old provisions of the Spanish Civil Code. Section 1803 imposes liability upon all persons for their individual negligence, and section 1804 imposes liability upon certain persons for the negligence of their children, wards, and apprentices, and upon those owning or conducting an establishment or enterprise for the negligence of their employés. For example:

It makes the father, and, in case of his death, the mother, liable for damages caused by minors who live with them;

Guardians for damages caused by minors or incapacitated persons who are under their authority and live with them;

Owners or directors of an establishment or enterprise for damages caused by their employés in the service of the branches in which the latter may be employed or on account of their duties;

Masters or directors of arts and trades for the damages caused by their pupils or apprentices while they are under their custody.

It is, however, provided that the liabilities imposed by this section

(1804) shall cease if the person responsible therefor shall prove that he employed all the diligence of a good father of a family to avoid the damage.

Manresa in his Commentaries on the Civil Code, in speaking of the liability imposed by these provisions, says:

"That said liability ceases when the persons who are held liable according to section 1804 show that they used all the diligence of a good father of a family, and therefore a legal presumption is required by said section in regard to the liability of the persons referred to in said section, inasmuch as such is due to the relations, of authority or superiority, which they hold with the persons causing the injury. It is presumed by the law that the cause of said injury is charged upon them on account of their own fault or negligence, and they are considered as moral authors of said injury, in view of the fact that they did not take the care or superintendence necessary to prevent the causing of said injury resulting from the aforesaid fault or negligence; and this is also the view taken of the matter in the judgment of May 18, 1904, above cited, but said presumption which has been established by law is not an absolute one or juris et de jure, but juris tantum, and therefore is dissipated by adverse proof." 12 Manresa, 611.

It appears from the foregoing that the owner or director of an establishment or enterprise is liable for damage caused by the negligence of his employé, acting in the course of his employment, unless he shall prove, as an affirmative defense, that he took the care and superintendence of a good father of a family to avoid the damage, and that this is so whether the person injured is or is not an employé engaged in the same enterprise; also that the duty of the owner or director does not end with his having exercised the diligence of a good father in selecting his employés; that he must go further, and show that he exercised the required diligence in superintending the work of the establishment or enterprise in which his employés are engaged. This seems to be the view taken by the Supreme Court of the United States in Panama Railroad Co. v. Toppin, 252 U. S. 308, 40 Sup. Ct. 319, 64 L. Ed. ——, decided March 15, 1920.

In that case the court was construing article 2347 of the Civil Code of Panama and article 5 of the Panama Law, No. 62, of 1887, which contain similar provisions to those of sections 1803 and 1804 of the Civil Code of Porto Rico. Article 2347 of that Code provided:

"Every person is responsible not only for his own actions, for the purpose of making good the damage, but for the act of those who may be under his care.

"Thus, the father, and failing him the mother, is responsible for the acts of the minor children who live in the same house.

"Thus the tutor or guardian is responsible for the conduct of the pupil who lives under his protection and care.

"Thus the husband is responsible for the conduct of his wife.

"Thus the directors of colleges and schools respond for the acts of students while they are under their care, and artisans and empresarios for the acts of their apprentices and dependents in like cases.

"But this responsibility will cease if with the exercise of the authority and care which their respective characters prescribe for and confer on them they could not prevent the act."

Article 5 of Panama Law, No. 62, of 1887, provided:

"Railroad companies are responsible for the wrongs and injuries which are caused to persons and properties by reason of the service of said railroads

and which are imputable to want of care, neglect or violation of the respective police regulations which shall be issued by the government as soon as the law is promulgated."

In that case an engineer of the Panama Railroad Company, while operating an engine through the city of Colon, at a speed greater than that permitted by the police regulations of Panama, ran into the plaintiff while riding his horse, and, inasmuch as the railroad company had used due care in the selection of its engineer, one of its contentions was that it could not be held liable under the law of Panama for the injury caused by the negligence of the engineer. In reply to this contention, Mr. Justice Brandeis, in delivering the opinion of the court, said:

"This contention was made and rejected by the supreme court of Colombia in a case similar to the case at bar. Cancino v. Railroad of the North, decided December 16, 1897, XIII Judicial Gazette Nos. 652, 653. There suit was brought against the empresario of a railway to recover for the loss of a house by fire due to the negligent operation of a locomotive. The court rested the liability upon section 2347 of the Civil Code, declaring that all doubt as to the existence of the necessary dependency was removed by article 5 of law 62 of 1887, which 'without in any way mentioning the dependents, employés, or workmen of railway enterprises, makes their empresarios responsible for the damages and injuries which they may cause to persons or to property by reason of the service of the said roads.' The court continues: 'And there is not in the record any proof whatever that any care or precaution, either on the part of the empresario or the engineer, had been taken to prevent the fire, the proof that the empresario on his part had exercised much care in the selection of his employés not being sufficient in the opinion of the court, because the diligence and care here treated of, is that which ought to have been exercised in order to prevent an injury that could have been easily foreseen.' This case seems to overrule in effect the principal authority to which the plaintiff in error has referred us—in fact, it is not unlikely that such was the object of article 5 of law 62 of 1887."

[3] The duty of superintendence imposed upon the employer by the civil law is a personal duty, and, if he delegates it to an employé who is negligent in its performance, the employer will be liable. 2 Labatt, Master & Servant (Ed. 1904) § 877. The fellow servant rule of the common law is not recognized in any European country where the civil law prevails. Pollock says that the rule was forced by the House of Lords "upon the reluctant courts of Scotland to make the jurisprudence of the two countries uniform"; that "no such doctrine appears to exist in the law of any other country in Europe." Pollock on Torts (10th Ed.) p. 106; Labatt, Master & Servant (Ed. 1904) § 890; McNaughton v. Caledonian R. Co. (1857) 19 Sc. Sess. Cas. 2d Series, 271; Bartonshill Coal Co. v. Maguire (1858) 3 Macq. H. L. Cas. 266. It does not prevail in France (Dalloz, 1st partie, p. 271); nor in Italy, Switzerland, Germany, Austria, or the Province of Quebec (2 Labatt, Master & Servant [Ed. 1904] § 890; Boston & Maine R. R. v. McDuffey [Second Circuit] 79 Fed. 937, 25 C. C. A. 247); nor in Mexico (Mexican C. R. R. Co. v. Sprague, 114 Fed. 544, 52 C. C. A. 318; Mexican C. R. R. Co. v. Knox, 114 Fed. 731, 52 C. C. A. 21); and in no decision of the Supreme Court of Porto Rico to which our attention has been called or which we have been able to find is the existence of such a rule suggested. In Louisiana the courts have adopted the fellow servant rule in a modified way. If the negligence is that of a

superior servant—one having the direction and control of the servant injured—the master is held responsible for such negligence. But if the negligence is that of a servant not possessing such power of direction and control, he is regarded as a fellow servant whose negligence is assumed as a risk of the business. Weaver v. W. L. Goulden Logging Co. (1906) 116 La. 468, 40 South. 798. But even in Louisiana the plaintiff in this case would not assume the risk of injury due to the negligence of his superintendent, Fernandez.

We are not unmindful of the fact that in Brooks v. Central Ste. Jeanne, 228 U. S. 688, 33 Sup. Ct. 700, 57 L. Ed. 1025, the fellow servant rule was applied; but in that case it was not shown that, under the law of Porto Rico, the liability of a master for injury to a servant caused by the negligence of a fellow servant differed from the common law, and it appearing that the Act of March 1, 1902, above referred to, had been enacted in Porto Rico, the terms of which apparently presupposed the existence of the fellow servant rule, the Supreme Court assumed that the rule as to fellow servants was in force there. But, as above said, after the investigation we have been able to make, we are compelled to hold that the fellow servant rule does not prevail in Porto Rico; that the defense of the good father contained in section 1804 of the Code is the rule in force there, except as it may have been done away with in suits brought under the Act of March 1, 1902.

The first assignment of error has not been argued by the plaintiffs in error, and we regard it as waived. We fail, however, to see wherein the evidence was incompetent.

The second assignment concerns the charge of the court to the jury. The first matter complained of under this head is that part of the charge in which the court deals with the question whether Fernandez was an employé of Ezquiaga or an independent contractor. All we find it necessary to say about this is that the evidence bearing upon the question was conflicting, and the jury were instructed to consider the evidence and find whether Fernandez was acting in one capacity or the other, and that if they found he was an independent contractor the defendants would not be responsible. In this there was no error.

The next matter complained of relates to instructions of the court as to the meaning of the rule of the good father. The jury were instructed that, in order to find for the defendants under this rule, they must be satisfied that the defendants not only exercised the care of a good father in the employment of Fernandez as their servant or agent, but that they exercised like care in superintending the work which he and the other employés were engaged in. This matter has been above dealt with and the instructions were in this regard unexceptionable.

In the remaining matter under this assignment defendants complain that the court erred, in that it did not charge the jury that Fernandez was the fellow servant of the plaintiff, and that, if the plaintiff's injury was due to Fernandez' negligence, he assumed the risk and could not recover. The court in substance charged the jury that a man who takes employment in a business or enterprise does so subject to the ordinary risks of the business, but that Fernandez was not a fellow

servant, but was the head of this "particular job; that what he said had to be done," and that if he was negligent the plaintiff did not assume the risk, but that they could not charge the fault of Fernandez on Ezquiaga, "except under the particular circumstances I have mentioned"—meaning unless he was a superintendent of the defendants and they had failed to exercise the care and superintendence of a good father. This portion of the charge, if anything, was too favorable to the defendants, for the court told the jury that the plaintiff could not recover if his injury was due to the negligence of servants other than Fernandez who were engaged on the work at the time.

We have examined the instructions given to the jury at the request of the plaintiff and find nothing in them that calls for further consideration. We have also examined the requests for instructions submitted by the defendants which the court declined to give and are of the opinion that they were properly refused.

The judgment of the District Court is affirmed, without costs in this court.